UNITED STATES, Appellee

v

CLEARY W. MELVILLE, Captain, U. S. Army, Appellant

8 USCMA 597, 25 CMR 101

No. 9645

Decided January 17, 1958

*First Lieutenant Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief were *Colonel James M. Scott* and *First Lieutenant Bert M. Gross.*

*First Lieutenant Richard W. Young* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Robert L. Spatz,* and *First Lieutenant Arnold I. Burns.*

## Opinion of the Court

HOMER FERGUSON, Judge:

A general court-martial, convened in August 1956, at the Presidio of San Francisco, found the accused, Captain Cleary W. Melville, guilty of having wrongfully cohabited with Mrs. Lore Rosa Tipton, a woman not his wife. The accused officer was sentenced to be dismissed from the service and to forfeit all pay and allowances. From the board of review's affirmance of the findings and sentence, the accused before this Court urges several errors upon which he seeks reversal of his conviction. His major contention is that he was prejudiced by the involuntary exclusion of his individual counsel during a pretrial interrogation conducted by agents of the Criminal Investigation

Detachment. Additionally, he claims that the law officer erred in instructing the court on the maximum authorized sentence.

The issue relating to the exclusion of the accused's civilian counsel during an interrogation by agents of the Criminal Investigation Detachment arose in the following manner. On or about April 15, 1956, the accused became aware that his relationship with Mrs. Tipton had ripened into the subject of a criminal investigation. He immediately retained the services of civilian counsel to advise and assist him. On April 17, 1956, the accused was requested to appear at the Criminal Investigation Detachment office. He ar-

rived in the company of his counsel and was directed to the attention of Agents Hallett and Lyons. At this time counsel expressed the desire to be present during any interrogation which might ensue. Agent Hallett, however, informed him that the accused was only to be asked several questions involving "some matters they had received from Germany, it was not in the nature of a preliminary hearing, and it wouldn't be necessary for me to be present." Counsel remained in an anteroom for approximately one hour and a half while the accused was being interrogated by the agents. At the conclusion of this interrogation the accused informed counsel that he had been questioned concerning his relationship with Mrs. Tipton.

At trial the accused testified he had been advised that he was suspected of having committed the offenses of forgery and adultery and had been read Article 31, Uniform Code of Military Justice, 10 USC § 831, and explained his rights by the agents. During this session he was requested to make a written statement, which he declined to do until he had first "consulted with counsel." He was thereupon released and requested to return within the next few days.

Following this first interrogation, the accused and his counsel returned to the latter's office where counsel contacted Agent Hallett and complained that the agent had taken advantage of him by misrepresenting the nature of the interrogation. Two days later, however, the accused returned to the Criminal Investigation Detachment office, where he was once more warned of his rights under Article 31, supra. Civilian counsel once again accompanied him, and once again waited in the anteroom.

During this second session, the accused assisted the agents in preparing a statement. While the statement was being typed the accused was permitted to visit the hospital in order to obtain medication for a heart condition. Upon his return, he read and signed the statement, which was subsequently admitted into evidence at trial. The accused acknowledged that he knew he did not have to make a statement and that any statement he did make could be used against him. He also agreed that no promises or threats were used in obtaining the statement.

Counsel vigorously objected to the statement's admission on the ground that he had not been permitted to be present during the interrogation. He asserted that had he been present, the accused would not have incriminated himself. He also argued that had he been advised of the true nature of the interrogation, he would have properly advised the accused though not present himself. An out-of-court conference was held in which Agent Hallett readily admitted that he had denied counsel the opportunity to be present. He based his denial on "[o]ur Manual for Criminal Investigation, FM 19–20, dated July 1951,[1] which states we do not have to allow any defense to sit in on any interrogation of an accused until such time as formal charges have been preferred against that man. At that time no charges had been preferred against Captain Melville, and I declined to allow . . . [him] to sit in on the interrogation."

I

The case at bar differs substantially from the recent cases of United States v Gunnels, 8 USCMA 130, 23 CMR 354, and United States v Rose, 8 USCMA 441, 24 CMR 251. In *Gunnels,* supra,

---

[1] Paragraph 63 of the Field Manual provides:

". . . In response to a request by the person being questioned for legal counsel, the investigator should courteously but firmly refuse and state that the Uniform Code of Military Justice does not provide for counsel prior to charges being preferred."

This paragraph is headed "RIGHTS OF PERSON BEING INTERROGATED," and it would appear that this provision is only applicable to the accused's entitlement to appointed military counsel and has no application to the accused's retention of individual civilian counsel. See United States v Moore, 4 USCMA 482, 16 CMR 56.

we held that it was error to advise one suspected of an offense that he could not consult with counsel in connection with an interrogation by law enforcement agents. In the *Rose* case, supra, we held that where an accused requested the opportunity to contact an attorney while being interrogated by Office of Naval Intelligence agents it was error to deny such request. This case, however, does not resemble either *Gunnels* or *Rose* for here there is no question concerning the accused's right to obtain or consult individual civilian counsel prior to the formal filing of charges. Our problem is a narrow one dealing with whether a suspect is entitled to have individually retained counsel physically present during a preliminary interrogation. The holdings of the courts are not unanimous in this area. See Bowles v Baer, 142 F2d 787 (CA 7th Cir) (1944); Gilmore v United States, 129 F2d 199 (CA10th Cir) (1942); United States v Levine, 127 F Supp 651 (D Mass) (1955); but see In Re Groban, 352 US 330, 77 S Ct 510, 1 L ed 2d 376 (concurring opinion of Justices Frankfurter and Harlan and dissenting opinion of Chief Justice Warren and Justices Black, Douglas and Brennan); Wood v United States, 128 F2d 265 (CA DC Cir) (1942).

We believe that under the circumstances presented, the accused was not prejudiced by the exclusion of his counsel during interrogations. Under our approach to the case we need not reach the specific issue raised for the statement admitted in evidence was voluntarily obtained after the accused had sufficient opportunity to consult with counsel. Nothing of an incriminating nature arising out of the first interrogation was presented. Concerning the second interrogation, during which the statement was obtained, the accused conceded that he was fully advised of his rights and that he received neither promises nor threats by the agents. Thus, in our view, we believe it unnecessary to decide the first issue. We do not, however, wish to be understood in any manner as placing our approval on the practice of excluding the presence of individually retained counsel from an interrogation prior to the preferral of charges. We simply do not reach that issue in this case.

## II

This leaves for consideration the question of the law officer's instructions on the maximum sentence. The accused contends that the maximum imposable period of confinement for the offense of wrongful cohabitation is the same as that for any other general disorder, namely, confinement at hard labor for four months and partial forfeitures of two-thirds pay per month for a like period. The law officer had advised the court that because of the inclusion of the words "a married man" in the specification, the offense—for sentence purposes—could be equated to that of adultery which carries a maximum period of confinement of one year. Before this Court the Government took the position that the law officer had correctly stated the maximum sentence and that assuming *arguendo* he was in error, the accused could not have been prejudiced by reason of the fact that the court adjudged a sentence no more severe than dismissal and total forfeitures.

The Table of Maximum Punishments, Manual for Courts-Martial, United states, 1951, makes no specific provision for the offense of wrongful cohabitation. From this circumstance the Government argues that cohabitation by a married man with a woman not his wife is "closely related" to the offense of adultery so that the maximum punishment prescribed for that offense is authorized.[2]

---

[2] Paragraph 127c, Manual for Courts-Martial, supra, makes the following provision in the event a particular offense is not specifically listed in the Table of Maximum Punishments.
   "The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table

The Government invites our attention to the case of United States v Bailey, 12 CMR 564, in which a board of review held that the offense of wrongful cohabitation by a married man with a woman not his wife was so similar to the offense of adultery that it could be equated to that offense for purposes of punishment. The board reasoned that continuous cohabitation raises a strong inference of habitual sexual intercourse and that "the marriage of the offending party" is the element that distinguishes the offense from a mere disorder thereby increasing the gravity of the offense. Appellate defense counsel, on the other hand, rely heavily on the board of review case of United States v Smith, CM 390154, decided July 16, 1956, which reached a directly opposite result. In *Smith*, the board expressly declined to follow the holding in *Bailey*, supra, and elected instead to limit the punishment to that imposable for a simple disorder. In arriving at its holding, the board reasoned that:

". . . there was an attempt by the Government in pleading the marital status of the accused to allege a more serious degree of the offense of wrongful cohabitation. It is the opinion of the Board that such language is unnecessary, and that the Government should not be permitted to create new and more serious degrees of simple and well-established offenses.

"The laws of many, if not most, jurisdictions denounce unlawful or 'lewd' cohabitation of persons not married to each other as a misdemeanor. . . . However, our attention has been directed to no statute on this subject which provides different or heavier penalties depending upon the marital status of either party to the transaction. Prosecution under such statutes is

normally had in courts of limited jurisdiction, and not infrequently have as their principal object some purpose in addition to the punishment of the offender or his reformation."

We believe the *Smith* case is the better reasoned opinion in that the conduct alleged in this specification is not so closely related to and destructive of military discipline that it should be punished as a felony in the absence of some specific provision contained in the Table of Maximum Punishments. Wrongful cohabitation differs in many respects from the offense of adultery. In a prosecution for the latter offense, it is necessary to prove that one of the parties to the relationship was married at the time the offense was committed, whereas the offense of wrongful cohabitation requires no such proof. 1 Am Jur, Adultery, §§ 6 and 7; Evans v Murff, 135 F Supp 907 (D Md) (1955). Another critical distinction between the two offenses is that an essential element of adultery is that sexual intercourse be shown while the offense of wrongful cohabitation contains no such element although quite often intercourse is inferred by the very nature of the relationship. 1 Am Jur, Adultery, § 9.[3]

An accused is entitled to know with some degree of specificity the nature of the offense of which he is accused in order that he can intelligently and properly prepare his defense. By charging the accused with the offense of wrongful cohabitation, the prosecution was relieved from the duty of proving that sexual intercourse had taken place. It therefore seems manifestly unfair to us now to permit the accused to be punished on the basis of the more serious offense of adultery, which in the military is classified as a felony. We conclude, therefore, that the offense of wrongful cohabitation is punishable

---

is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment."

[3] At trial, Mrs. Tipton testified that she had never engaged in any illicit relationship with the accused and that while living with him she shared a room with his mother, but never with him.

only as a general disorder carrying a maximum punishment of confinement at hard labor for four months and forfeiture of two-thirds pay per month for a like period. United States v Oakley, 7 USCMA 733, 23 CMR 197; United States v Blue, 3 USCMA 550, 13 CMR 106. Since there is a great disparity between the law officer's instruction on the maximum punishment and the actual punishment that could be imposed, we believe that a redetermination of the sentence by a court-martial is justified. United States v Johnson, 7 USCMA 488, 22 CMR 278; United States v Oakley, supra.

The decision of the board of review with respect to the findings of guilty is affirmed. The sentence, however, is set aside and a rehearing on the sentence is ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur with my associates on the disposition of the first issue, but I dissent from the holding that the law officer erred in his instruction on the maximum sentence imposable.

I find no reason to decide this case on the theory that an accused is entitled to know the nature of the offense of which he is charged in order to prepare his defense. That is a proper principle of law, but it has no relevancy to the issue in this case. Here the specification is certain and the accused was put on notice that he, as a married man, must defend against a charge that he unlawfully cohabited with a woman not his wife for some sixteen-odd months. He was found guilty of that offense, and the legal and factual issues involved in that conviction were resolved adversely to him before the question which now concerns us arose. Here we deal with a question of law, and the accused was and is free to meet the issue in any manner he desires.

The President of the United States has been empowered to fix the maximum sentences for offenses and, therefore, I look to the Manual for guidance. It is conceded by all that this offense is not specifically listed in the Table of Maximum Punishments, and when that situation exists, paragraph 127c of the Manual is controlling. It provides:

"The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment."

The offense of adultery is listed and, from the foregoing, it is apparent that if the offense charged and proven is lesser included therein or closely related thereto, the punishment listed for the former is appropriate in this instance. Even a cursory reading of the specification and the transcript of testimony will disclose how closely similar the pleadings and facts of the case are to those necessary to allege and prove the crime of adultery. The accused was a married man and he lived openly and notoriously with an enlisted man's wife over an extended period of time. Those circumstances might have supported a finding of sexual relations. However, regardless of the absence of proof of specific acts of intercourse, the conduct of the accused so nearly equates to the behavior of an adulterer that I see little difference in its impact on both the civilian and military societies. It offends against the canons of decency and so prejudicially affects the credit of the military service that to hold it to be no more than a mere disorder for punishment purposes is contrary to my concepts of proper military jurisprudence. Disorders are generally considered to be offenses which are petty, and I would not force a crime which demoralizes the military community into that class.

I am not concerned about the fact that intercourse was not pleaded or proved for two reasons. First, had adultery been alleged and the same facts as found in this record established, then the court-martial could have returned a finding of unlawful cohabitation as an included offense. Under the Manual provision hereinbefore quoted, the same punishment could have been imposed. Second, for some sixteen months, the accused held himself out to be married to the woman involved, and most reasonable persons would infer from those facts and circumstances that the relationship was not platonic. However, even if the inference were erroneous, when the true facts were revealed, the impact on the civilian and military communities would be no less because the Government could not establish sexual intimacies.

For the foregoing reasons, I would affirm the decision of the board of review.