United States v Brown, 10 USCMA 498, 28 CMR 64. Without belaboring this opinion by particularizing in detail, it would appear from the facts put before the law officer that short periods of the delay were chargeable to the defense. In the main, however, the time was consumed by correcting deficiencies in the original investigation to insure that the accused's rights were fully protected; difficulties in preparing transcripts of those proceedings; and steps incident to processing the case at the pretrial stages. While we do not wish to be understood as placing our imprimatur on the manner in which this case was handled in bringing it to trial, we cannot say, as a matter of law, that the law officer erred in his action on the motion. This record does not show any willful, purposeful, vexatious, or oppressive delay by the Government. True enough, there were brief periods of inactivity, but as was pointed out in United States v Williams, supra, such "in an otherwise active prosecution cannot be regarded as oppressive or unreasonable." 12 USCMA at page 83.

UNITED STATES, Appellee

v

JAMES A. BROWN, Private First Class,
U. S. Marine Corps, Appellant

13 USCMA 14, 32 CMR 14

No. 15,324

April 6, 1962

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel R. G. Coyne*, USMC.

*Major Elvin R. Coon*, USMC, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel L. W. Martin*, USMC.

KILDAY, Judge:

## I

This is a companion case to United States v Brown, 13 USCMA 11, 32 CMR 11, this day decided. The two men were tried in common by the same general court-martial for the same offenses. Accused, like his cohort, was convicted as charged for attempted larceny and aggravated assault, in violation of Articles 80 and 128, Uniform Code of Military Justice, 10 USC §§ 880 and 928, respectively. The findings have been affirmed at intermediate appellate levels and, as he comes before this Court, accused's adjudged sentence has been reduced by the board of review to bad-conduct discharge, total forfeitures, confinement at hard labor for a year, and reduction. We granted his petition for review on the same two questions involved in the companion case, and on one additional issue.

## II

We need not be detained by the two questions common to both this case and United States v Brown, supra. As to them our decision in that instance is controlling and dispositive, for the issues and facts bearing thereon are the same. For the reasons there set forth, both contentions must also be rejected in this instance.

## III

We may turn our attention immediately, therefore, to the third issue, which involves this particular accused alone. It requires that we determine:

"Whether the alleged confession of James Brown to Captain Lewis . . . was admissible in view of the request of James Brown for legal advice and his subsequent interview with Lt. Richardson."

Briefly, the evidence shows that after the offenses accused was called in for interrogation by his company commander, Captain Lewis, who advised him of his rights against self-incrimination. Accused made no statement at that time. In fact, it was not until his fourth interview with the commanding officer and others with a criminal investigator, and several days after learning that both his accomplices in these alleged offenses had admitted complicity, that accused finally made the inculpatory admissions with which we are concerned. Prior to that time he had declined to make any statement.

It was at one of these latter interviews, still before any incriminating statement had been made by accused, that the chain of events critical to the present issue commenced. He at that time made known to his commander and the unit first sergeant his desire for legal advice or counsel. The latter accordingly arranged an appointment for accused to see Lieutenant Richardson, a nonlawyer detailed as "Battalion Legal Officer." The lieutenant admittedly warned accused appropriately of his rights and the fact that the choice of making a statement was wholly his own. However, he also conceded that because he thought the accused seemed to be "feeling a weight on his chest" he counselled him as a confidant on the "moral question" regarding the advisability of making a statement in light of the fact that his two cohorts already had done so. He asked accused if he would not "feel a lot better" if he made a statement, and the accused replied in the affirmative. He discussed with the accused the moral issue "over and over again" for about an hour. When accused left Richardson he returned to his company commander and revealed his complicity in the suspected offenses.

Nothing in the record indicates accused was apprised he was receiving advice from a nonlawyer filling a quasi-legal billet. Indeed, it appears that accused kept the appointment made for him by the first sergeant with the impression he would reecive the requested legal advice and he testified that, although he made no inquiry, he assumed the lieutenant was a lawyer. It was due to the latter's advice, ac-

cused testified, that he was influenced to make the incriminating pretrial statement in question.

Appellate defense counsel rely heavily on our decisions in United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251; and United States v Wheaton, 9 USCMA 257, 26 CMR 37. See also United States v Melville, 8 USCMA 597, 25 CMR 101; and United States v Kantner, 11 USCMA 201, 29 CMR 17. The Government, on the other hand, asserts the law does not require that, at this preliminary stage, an accused be furnished with an ·appointed lawyer. Further, they submit that the accused in the case at bar was afforded all that he requested and, therefore, that the issue should be decided against him.

The law is clear under the cases previously cited that when an accused or suspect requests such information it is error to misadvise him of his right to consult with an attorney and "force him to submit to questioning . . . without a lawyer." *Gunnels,* supra, at page 135. If the accused seeks to exercise his right to consult with counsel during interrogation he must be afforded the opportunity to do so. Application of those principles, we believe, will provide the answer to our inquiry.

True it is, as the Government argues, there is no obligation to appoint accused an attorney at this investigative stage of the proceedings. Moreover, there is no question in the case at bar that when accused asked for advice his interrogation was thereupon discontinued. And it is also correct that there was no express and affirmative misadvice as to his right to counsel, either by the parties to whom accused made his request or by Lieutenant Richardson.

However, neither does this record indicate that accused was ever expressly advised he was entitled to consult with an attorney and have counsel with him during questioning. United States v Gunnels, supra, at page 135. Cf. Spano v New York, 360 US 315, 3 L ed 2d 1265, 79 S Ct 1202 (1959). See also United States v Melville, supra. Rather, when accused requested advice, the first sergeant set up an interview with the "Battalion Legal Officer," a nonlawyer. While accused had not precisely and in so many words asked to consult with an attorney, such request is fairly embraced in the language he used. Further, accused believed he had been counselled by a lawyer, and the "legal officer" did nothing to dispel that belief. And accused contends the interview influenced him to incriminate himself.

Under those circumstances, we are required to decide this issue in accused's favor. We need not and do not impute bad faith or ill purpose to the individuals here involved. For the purpose of this case it matters not whether their action was unwitting or unintentional. It is sufficient here to note that accused asked for legal advice and was directed to Lieutenant Richardson, whom he believed to be a lawyer.

The Government asserts that the latter's advice was in no respect incorrect, and that advice or counsel need not necesarily emanate from an attorney. That contention is immaterial in the circumstances of this case, however, for the fact remains that accused believed the lieutenant was a lawyer; was never apprised otherwise; his testimony that he gave the pretrial statement because of Richardson's "influence" is not, as we view the evidence, controverted; and, finally, he was not informed he could not be forced to submit to interrogation without the advice of a "genuine lawyer." We do not believe it can be gainsaid that the influence of a lawyer might be greater than that of his lay brother, whether the advice be the same or no. Understandably, in our view, a young man who is himself unschooled in the law and is away from home and in trouble might, and is entitled to place considerable trust and confidence in, and be markedly influenced by, the counsel of a man he mistakenly believes—through no fault of his own— to be an attorney. And surely he has

**17**

every right to place more credence in the advice of his lawyer than that offered by an individual without professional qualifications. To draw a rough parallel, we suppose one with a physical ailment possibly necessitating surgery or other complicated treatment, might be more prone to rely on the judgment of a medical doctor than that of a lay person with training in first aid.

Due to acts of omission by the others, accused was never effectively advised of his rights and was led to counsel with the nonlawyer. In the posture of the record before us we hold these factors must, even if the result of honest mistake, properly be charged to the Government. See United States v Hamill, 8 USCMA 464, 24 CMR 274. Accused was not here affirmatively misadvised of his right to consult an attorney. Nor is this a case in which no request was made and the subject never broached. Rather, after asking for counsel and through no fault of his own, accused was misled through omission. We discern little difference in ultimate impact on him as to the fashion in which he is misled.

On the evidence in this record, and for the reasons set out above, we hold that accused's pretrial statement should not have been admitted into evidence. United States v Gunnels; United States v Rose; United States v Wheaton; all supra. See also United States v Kantner, supra. Cf. United States v Melville, supra.

The decision of the board of review is reversed, and the findings and sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs.

Chief Judge QUINN concurs in the result.