UNITED STATES, Appellee

v

WILLIAM R. POWELL, Private, U. S. Marine Corps, Appellant

13 USCMA 364, 32 CMR 364

No. 15,998

December 7, 1962

*Lieutenant Colonel A. M. Hearn* argued the cause for Appellant, Accused.
*Major Elvin R. Coon, Jr.,* argued the cause for Appellee, United States.

## Opinion

FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of wrongful appropriation, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge and confinement at hard labor for three months. Intermediate appellate authorities affirmed, and we granted accused's petition for review upon assignments of error concerning the admissibility of certain oral statements made by him and the law officer's instructions to the court-martial with reference to their consideration of such evidence.

At some time during the period July 16 through July 31, 1961, a valuable diamond and emerald ring was taken from the quarters of Vice Admiral Charles Wellborn, located at New York Naval Shipyard, Brooklyn, New York. An investigation ensued, and the accused, who had served as a sentinel at

**365**

the Admiral's quarters, came under suspicion. On Friday, August 4, 1961, he was interrogated by First Lieutenant Philip A. Lo Presti, "legal officer" of the Marine Barracks, U. S. Naval Base, Brooklyn, New York, who had been assigned by his Commanding Officer, Colonel Layer, to investigate the theft.

Lieutenant Lo Presti, who was not a lawyer, advised Private Powell of his rights under Code, supra, Article 31, 10 USC § 831, and informed him that he was suspected of taking the ring. Lo Presti initially testified that the accused, prior to making any statement, asked "whether or not he had the right to talk to legal counsel." He replied, " 'I'm the legal counsel. Talk to me.' " Subsequently, the lieutenant denied that the accused had expressly so asked for counsel or demanded that he be furnished with a lawyer. Powell had indicated, however, that he wanted legal advice about what he should do and "what would happen to him." Lo Presti could not recall whether he had specifically said, "quote I'm your legal counsel unquote" but "I indicated to him that I would give him any help [he wanted]."

Accused testified that he had asked to speak to legal counsel before making any statement and had been informed by Lo Presti that " 'I'm your legal counsel. I'm the one you're talking to.' "

After accused executed his written statement, he was ordered into restriction. On Monday, August 7, 1961, he appeared before his commanding officer, Colonel Layer, at "office hours." Lieutenant Lo Presti was also present, and accused's written statement was "there before the Colonel." Colonel Layer advised the accused of his rights under Code, supra, Article 31, and asked if he "had anything . . . to say about this matter." Powell orally confessed to entering Admiral Wellborn's quarters and the taking of the ring. Colonel Layer directed that a pretrial investigation be held. Lo Presti advised accused of his right to counsel at the pretrial and ordered him to report to the Office of Naval Intelligence, where he was further interrogated, after another warning under Code, supra, Article 31, by Agent Caputo.

Powell told Agent Caputo that he had "already admitted taking a ring from the Admiral's house" and was in "enough hot water." He did not feel he should make any additional statements. At the time of this interview, Agent Caputo was fully aware of accused's statement to Lo Presti.

On the basis that the accused had been misled concerning his right to counsel, the law officer refused to admit in evidence either the written or the oral statements made to Lieutenant Lo Presti. However, he overruled defense objections to receipt of the subsequent incriminatory declarations made to Colonel Layer and Agent Caputo.

Before us, accused contends, as he did at the trial, that his statements to Colonel Layer and Agent Caputo were the product of the earlier inadmissible confession and should also have been excluded. The Government, however, argues the later statements were not tainted by the initial confession, and, in addition, that it, too, should have been admitted.

I have no hesitancy in rejecting the proposition that the law officer erred in excluding accused's oral █ and written statements to Lieutenant Lo Presti. See United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251; United States v Wheaton, 9 USCMA 257, 26 CMR 37; United States v Brown, 13 USCMA 14, 32 CMR 14; cf. United States v Melville, 8 USCMA 597, 25 CMR 101; United States v Kantner, 11 USCMA 201, 29 CMR 17. As we said in United States v Brown, supra, at page 17:

"The law is clear under the cases previously cited that when an accused or suspect requests such information it is error to misadvise him of his right to consult with an attorney and 'force him to submit to questioning . . . without a lawyer.' *Gunnels, supra,* at page 135. *If the accused*

*seeks to exercise his right to consult with counsel during interrogation he must be afforded the opportunity to do so."* [Emphasis supplied.]

At one point in his testimony Lieutenant Lo Presti admitted accused "asking . . . whether or not he had the right to talk to legal counsel" and replying, " 'I'm the legal counsel. Talk to me.' " It is also true that he subsequently retreated to the position that Powell "did not specifically ask for counsel at that moment or demand or assert his rights to a lawyer at that time." Nevertheless, Lo Presti's testimony as a whole makes it quite clear this retrograde movement on his part was a mere play on words and that, no matter how awkwardly this untutored nineteen-year-old Marine may have phrased his request, he effectively communicated his desire for an attorney's services. In return, Lo Presti undertook to assume that role, indicating "I would give him any help . . . referring to legal advice."

I am not inclined so narrowly to construe an accused's right to legal advice prior to or during interrogation as to require him to prate some magic formula. Rather, we should look to the substance of the matter and determine whether he made known his inclination. So viewed, Lo Presti's own testimony demonstrates his knowledge of the accused's wishes and how they were thwarted by his undertaking to assume the role of defense attorney after he—in his own words—"took off my hat as investigating officer." In short, accused was required to be satisfied in his search for legal assistance not only with the "advice" of a nonlawyer but with the services of one who was also charged with the investigation and solution of the very crime of which he was suspected. In light of these circumstances, the law officer's ruling excluding the initial statements to Lo Presti was compelled by our former holdings. United States v Smith, supra, and cases cited therein.

We turn, therefore, to the question whether accused's subsequent statements to Colonel Layer and Agent Caputo should have also been withheld

from evidence as the product of the earlier confession.

From its earliest days, this Court has indicated that it follows the rule barring the receipt in evidence of a confession which is tainted by an earlier, inadmissible statement to military authorities. United States v Monge, 1 USCMA 95, 2 CMR 1; United States v Dandaneau, 5 USCMA 462, 18 CMR 86; United States v Bayer, 331 US 532, 91 L ed 1654, 67 S Ct 1394 (1947).

The problem was extensively considered in United States v Bennett, 7 USCMA 97, 21 CMR 223. Speaking for a unanimous Court, Judge Latimer there declared, at page 101:

". . . [W]e now announce the rule that if the Government obtains admissions illegally, and they are of a nature likely to produce a subsequent confession, a strong showing that a subsequent warning severed the presumptive influence [of the earlier statement] must be made to permit use of the confession. Furthermore, absent any showing that the accused knew or had been informed that his prior admissions could not be used against him, the fact that he was advised of his rights prior to the execution of his confession would normally not avoid . . . [its resultant inadmissibility]."

See also United States v Dutcher, 7 USCMA 439, 22 CMR 229; United States v Green, 7 USCMA 539, 23 CMR 3; and United States v Spero, 8 USCMA 110, 23 CMR 334.

Applying these principles to the situation before us, the totality of the circumstances depicted in this record convincingly demonstrates that the later confessions were produced, as a matter of law, by the earlier disclosures illegally obtained by Lieutenant Lo Presti.

As noted above, Lo Presti voluntarily and improperly assumed the role of accused's "legal counsel" and purported to give him "legal" advice which apparently consisted primarily of exhortations to confess. During the week-end which elapsed between the taking of the state-

**367**

ment thus obtained and accused's appearance before Colonel Layer at "office hours," he was restricted and thus had no opportunity to seek elsewhere for guidance. And when he was interrogated by the Colonel, not only was his prior statement in plain view on the desk but his self-appointed "counsel" lent the influence of his presence during the repetition of his confession.

In like manner, Agent Caputo obtained a practically identical statement from the accused on the same day, and it was not without significance that the latter's reply to this officer was to the effect that he had already confessed to the larceny and could see no reason for the further questioning. Indeed, every factor in this record points unerringly to the conclusion that the accused operated under the assumption that the cat could not here be rebagged. Cf. United States v Spero, supra.

To rebut this series of events, the Government relies only upon the passage of time between the statement to Lo Presti and the giving of the confessions to Colonel Layer and Agent Caputo, the warnings each gave accused under Code, supra, Article 31, and the fact that, after making the statement to Colonel Layer, Powell was informed by Lieutenant Lo Presti that he would be entitled to legal counsel at the pretrial investigation convened under Code, supra, Article 32, 10 USC § 832.

These factors do not constitute the required strong showing of severance from the presumptive influence of the earlier confession. First, as we announced in United States v Bennett, supra, a mere repetition of the warning necessitated by the terms of Code, supra, Article 31, is normally insufficient to avoid the inadmissibility of the later statements. Nor, where an accused has been deprived of his right to consult with legally qualified counsel and has been restricted to his organization, does the passage of a week-end serve to render the baneful influence of the earlier statement remote, particularly where the investigator who assumed the role of accused's "counsel" was present during the second interrogation. Finally,

rather than to support the Government's contention, the fact that Lo Presti told accused he would eventually be furnished with a lawyer at the pretrial investigation, if at all significant, tends further to reinforce the conclusion that he was being deprived of his right to consult with an attorney prior to any further interrogation. Cf. United States v Gunnels, supra. Such advice would have the tendency to lead accused to believe that he was entitled to nothing beyond that which he had been afforded, i.e., an opportunity to secure "legal advice" from the military detective charged with the solution of the crime alleged.

In sum, then, as we have on many occasions pointed out, an accused or suspect who makes known his desire to seek legal advice must be advised of his right to do so and afforded an opportunity to exercise that right. United States v Gunnels; United States v Rose; United States v Brown, all supra. When he is denied that opportunity or is misled concerning the nature of his right to seek such counsel by one who not only lacks proper legal qualifications, but whose conflicting duty renders him ineligible to act as an attorney, any statement made while under the influence of such denial of opportunity or misleading advice is inadmissible in evidence. United States v Gunnels, supra; United States v Brown, supra. And if statements are obtained from the accused by others subsequent to such misadvice or denial of the right to consult counsel, the Government must strongly demonstrate that the later admissions and confessions were not the product of the earlier, inadmissible declaration. United States v Bennett, supra. When, as here, they have failed to carry this heavy burden, the statements should be excluded. The law officer's ruling admitting them in evidence was, therefore, erroneous and prejudicial.

As this conclusion with respect to the accused's confessions serves to dispose of the case, the issues relating to the law officer's instructions to the court-martial need not be examined. Suffice it to say that we have heretofore

pointed out both the need in instructions to impose the burden upon the Government to establish the voluntariness of an accused's statement beyond a reasonable doubt and to tailor the advice given the court members to the precise controversy before them. United States v Odenweller, 13 USCMA 71, 32 CMR 71; United States v Acfalle, 12 USCMA 465, 31 CMR 51. These injunctions are repeated to emphasize to law officers the dangers inherent in relying solely upon form books rather than upon the evidence in framing the issues to the military jury. Attention to the law *and* to the facts is necessary if the members are to be properly guided in their deliberations.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Judge KILDAY concurs in the result.

QUINN, Chief Judge (dissenting):

I am unable to follow the path of decision set out in the principal opinion. To begin with, I am impressed with the argument suggested by the board of review below that the law officer may have erred by not submitting the issue of the accused's alleged request for counsel to the court-martial as a question of fact for its determination. See United States v Odenweller, 13 USCMA 71, 32 CMR 71. I do not construe Lieutenant Lo Presti's explanation of his initial statement that he was accused's "counsel" as "a mere play on words." He consistently maintained that if the accused had "asked for counsel, I would have ceased the investigation because he [the accused] has a right to counsel if he specifically asks for it." And he denied the accused asked for counsel. Why then did he say he was accused's counsel? His explanation is simple, and plausible.

In addition to his other duties, Lo Presti was both the Marine Barracks legal officer and investigating officer. Consequently, when during the interrogation it appeared that the accused was unsure about what course to follow, he felt responsible for "safeguarding" the accused's rights. Accordingly, he assumed that this part of the interrogation required him to provide "legal counselling" to the accused; so, he figuratively "took off . . . [his] hat as investigating officer" and donned that of the legal officer. The following extract from his testimony serves to illustrate the point:

> "Q. And you state that you counselled him when he asked you questions as to the tenor of what would happen to the guilty person?
>
> "A. Yes, sir.
>
> "Q. Is this what you considered as legal counselling?
>
> "A. Yes, sir.
>
> "Q. And responses to questions that he directed in that line?
>
> "A. Yes, sir."

At no time, however, did he ever consider that the accused had asked for counsel; nor did the accused "even assert that he wanted to see someone else first before talking." In short, Lo Presti's testimony can reasonably be construed to indicate that the accused never directly or indirectly requested counsel; and that the true meaning of his earlier statement that he was accused's "legal counsel" is that he merely gave the accused advice which he "considered as legal counselling."

Assuming *arguendo* that I misread the import of Lo Presti's testimony and that the accused's admission to Lo Presti was inadmissible, I still cannot accept the conclusion that this statement *as a matter of law* made inadmissible the accused's later statements to Colonel Layer and Agent Caputo. An inadmissible confession or admission does not "perpetually" disable the confessor from making a usable confession, after the conditions which invalidated the first statement are removed. United States v Bayer, 331 US 532, 91 L ed 1654, 67 S Ct 1394; United States v Hogan, 9 USCMA 365, 26 CMR 145. Whether the influence of the first confession taints a later confession is, basically, a question of fact that depends for its determination upon consideration of all the relevant circum-

**369**

stances. United States v Monge, 1 USCMA 95, 2 CMR 1. There is at least one circumstance, which the principal opinion disregards, but which, in my opinion, the law officer and the court-martial could properly consider, that indicates the later statements were free from any taint of the statement to Lo Presti.

The accused testified in connection with his statement to Lo Presti. He admitted he knew, and was informed by Lo Presti, that he did not have to say anything whatever to the lieutenant; and that if he did speak, what he said could be used against him. He also admitted he knew he had a right to counsel (and he maintained he asked for counsel). According to his testimony, he was afraid that if he remained silent he "was going to [be] lock[ed] . . . up." He, therefore, asked the lieutenant what would happen to the " 'person [who took the ring] if he was to come up here and admit he did it?' " The lieutenant advised him that this person would probably be "confined." The accused's testimony in material part continues as follows:

". . . [S]o I said to Lieutenant Lo Presti—I said, 'Well, sir, I believe I know the person,' and I says 'I don't think he'd be confined,' so Lieutenant Lo Presti said, 'There isn't anything I can do. It's out of my hands. It's up to the Colonel.' . . . So at that time I told Lieutenant Lo Presti to call the Colonel."

This evidence indicates that while the accused was young in years, he was not overawed by his superior in age and rank; and he was quite prepared to match his own evaluation of Colonel Layer's response to the situation against that of Lieutenant Lo Presti. This evidence is sufficient to raise at least a question of fact as to whether the accused's later admissions to Colonel Layer were the result of a conviction that the "cat was already out of the bag," or merely to further the accused's own personal interests. See United States v Wheaton, 9 USCMA 257, 26 CMR 37; United States v Acfalle, 12 USCMA 465, 469, 31 CMR 51.

Substantially the same argument relating to the statement to Colonel Layer applies to the statement to Agent Caputo. Additionally, there is other evidence from which it can independently be concluded that this statement was completely voluntary and unrelated to the Lo Presti statement. The point is summarized in trial counsel's argument to the court-martial as follows:

". . . [I]n the accused's conversations with Mr. Caputo, the accused was specifically told *that he was not being questioned with regard to the missing ring,* [but] . . . the accused himself volunteered this information without prompting whatsoever from Mr. Caputo." [Emphasis supplied.]

Turning to the instructions, they could have been more specific and more artful. However, we rejected a challenge to similar instructions on the latter ground in United States v Cotton, 13 USCMA 176, 32 CMR 176. As to the present demand for greater specificity, the question of voluntariness was the only real disputed issue in the case. The issue was extensively argued in the closing arguments, with particular emphasis on the probable influence of the statement to Lo Presti on the later statements to Colonel Layer and Agent Caputo. Considering the instructions in the light of these arguments, there is so apparent a continuum between the two as to compel the conclusion that the court-martial knew, and understood, that the effect of the taint of the Lo Presti statement was one of the issues it had to decide. See United States v Williams, 13 USCMA 208, 32 CMR 208. In my opinion, therefore, the law officer's failure to spell out the voluntariness issue with greater particularity did not prejudice the accused. Cf. United States v Acfalle, supra; United States v Shanks, 12 USCMA 586, 31 CMR 172.

I would affirm the decision of the board of review.