I dissent. See my opinion in United States v Johnson, 18 USCMA 436, 40 CMR 148, decided this date.

UNITED STATES, Appellee

v

VICTOR A. ADAMS, Private First Class,
U. S. Army, Appellant

18 USCMA 439, 40 CMR 151

No. 21,574
July 11, 1969

*Captain Bernard J. Casey* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain Stephen Arinson, Captain Anthony F. Cilluffo, Captain Dennis R. Hunt,* and *Captain James E. Stevens.*

*Captain Warren W. Kaufman* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

## Opinion of the Court

DARDEN, Judge:

Tried before a general court-martial in Frankfurt, Germany, the accused pleaded not guilty but was found guilty of absence without leave and indecent assault, violations of Articles 86 and 134, Uniform Code of Military Justice, 10 USC §§ 886, 934, respectively. His sentence consisted of a dishonorable discharge, confinement at hard labor for one year, partial forfeitures for a like period, and reduction in grade. Intermediate appellate authorities have affirmed both the findings and the sentence. This Court then granted the accused a hearing on four issues, later enumerated.

Briefly, the record of trial shows that at 6:30 a.m. on October 12, 1967, the seventeen-year-old victim of the assault charge, a German female, departed her home in Buedingen, Germany, intending to catch a train to Frankfurt, where she attended school. While walking to the station, she was approached by a male dressed in civilian clothes but carrying a red necktie in his hands. When he frustrated her attempts to pass, she threw her handbag and books at him and began to scream. He, in turn, placed a hand over her mouth and threw her on the ground, falling on top. While prone, he pulled her head, grabbed her throat, kissed and fondled her, and finally asked that she remove her dress. Her struggle was unsuccessful until her screams brought others to the scene, causing her assailant to immediately flee.

The accused became a suspect for

the assault after reports of his having appeared in town earlier that day were coupled with his having been carried as the lone absentee from various units on his Post at the hour of the encounter. Taken into custody that same day, he had his room searched, and his clothes seized. Afterward, he was included as a member of a lineup. At that time, the victim pointed out both the accused and one of the other participants as possibly being her assailant. The latter, however, soon established his innocence. It should be noted here that at trial the girl did not identify the accused as her assailant nor did the other German witnesses who intervened on the morning in question.

Before the lineup, the accused was advised of his rights, including that of having a lawyer available. He immediately chose Major Merchant, an executive officer and nonlawyer, to represent his cause. The Major, in response to the accused's request, cautioned the accused prior to the lineup and was present during this and other proceedings.

Later, Adams was returned to the unit Military Police station where, after being advised of his rights, he was interrogated by investigators from about 2:40 p.m. until 4:00 p.m. Then, German police authorities questioned the accused for approximately ten minutes. Afterwards, the accused told American interrogators that he wished to talk. To them, following a repeated Miranda[1] warning, the accused declared he did not require the presence of counsel and then gave a statement in which he admitted being in town and having accidentally bumped the girl, knocking her to the ground. He did not intentionally touch her sexually. Her screams brought the approach of others, causing him to flee. He conceded that he had a red necktie in his hand but did not intend to hurt her with the tie. He might have fallen on top of her. He stated that the clothes taken from his

[1] Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966).

locker earlier that morning were not the clothing items he was wearing in Buedingen.

At trial, however, the accused took the stand and testified that he had seen in town that day none of the men who had testified for the prosecution. He refuted the assault charge, denying he had confronted the girl, yet at the same time saying he could not remember with preciseness just where he had been at 6:30 a.m., on the morning in question. Moreover, he declared that then he had been drunk.

Turning to the questions before us, the first inquires:

Whether the law officer committed reversible error by instructing that the deposition testimony of Specialist Van Den Berg (Prosecution Exhibit 7) was entitled to "the same rebuttable presumption that the witness speaks the truth. . . ."

This prosecution witness testified, by way of a deposition, that on the morning in question, while on the way to the Post, he had seen the accused in the crime area at approximately the time of the incident. The law officer, in due course, covered this evidence with the following instruction:

"In the present case, certain testimony has been read to you by way of deposition. This was the testimony of Specialist Van Den Berg. You are instructed that you are not to discount this testimony for the sole reason that it comes to you in the form of a deposition. It is entitled to the same consideration, the same rebuttable presumption that the witness speaks the truth, and the same judgment on your part with reference to its weight, as is the testimony of witnesses who have confronted you on the witness stand."

Appellate counsel for both the accused and Government are in agreement that the instruction in question is erroneous. It is practically identical to instructions found improper in United States v Griffin, 17 USCMA 387,

38 CMR 185; United States v Brown, 17 USCMA 390, 38 CMR 188; and United States v Bennett, 18 USCMA 96, 39 CMR 96. The question on this issue is thus reduced to the matter of prejudice. In the cases cited, this Court found prejudice in each individual instance. In *Griffin,* the two principal witnesses gave opposing versions of what had happened. The law officer then advised the court both were presumed to speak the truth, without explaining in any manner how the dilemma in which this presumption placed the court might be resolved. United States v Brown, supra, was similar, for the deponent was a major prosecution witness on all the charges and the additional issue of mental responsibility. United States v Bennett, supra, was a case of substantially the same kind. The deponent was the victim of an aggravated assault charge, with the only other evidence on the issue being the stipulated testimony of a witness who observed the encounter between the victim and the accused. Fearful that the court might have been misled by the reference to the deposition testimony, and that it might have improperly credited the stipulated testimony in the same manner, the Court found a fair risk of prejudice.

This case, factually distinguishable, requires a different result. In this instance, the prosecution produced three witnesses in addition to Van Den Berg who had seen the accused in town on the evening of October 11–12. One had been the accused's drinking companion that night until 3:15 a.m. when they parted. Another had spoken to the accused at about 5:40 a.m. when they met near a bar in Buedingen. The last, a cook, was informed by the accused at their meeting that he would return to Base the next morning in time to take over the duties of a dining room orderly.

Further, the testimony of the unit clerk showed that this accused had signed out on the pass book at 2:10 a.m. on October 11, and had not signed in until required to do so at 7:00 a.m. the next morning.

Similarly, the Assistant Charge of Quarters testified that he had made bed checks on the accused during the early morning hours of October 12 every half hour from 4:30 until 6:00 a.m. and that he had never found the accused.

That is not all. The coat worn by the victim and the sweater alleged to have been worn by the accused were examined at the crime laboratory in Frankfurt. In the opinion of the examining expert, hairs found on both garments came from the same person, for these were identical in all physical characteristics. Hairs taken from the head of the victim were found to be "grossly similar" to the hair found on these two clothing pieces.

In contradiction to the abundant evidence offered by the prosecution are the denials of the accused. An admitted prevaricator, he explained away the differences in his pretrial statement and his in-court testimony by asserting that he would lie to stay out of a German jail. He denied seeing those who had seen him, denied ownership of the incriminating sweater, denied knowing a distinction between " 'lawyer' " and " 'counsel,' " and denied being at the scene of the incident.

Considering all the evidence, we believe that the erroneous instruction, relating solely to the deposition testimony of Van Den Berg, was not influential in the court-martial's findings. We are confident that in this case the adverse testimony of many other prosecution witnesses caused the effect of the improper assessment of Van Den Berg's cumulative statement to be inconsequential. It is unnecessary to assess the accused's inconsistent assertions. The error in this case, therefore, is of a nonprejudicial nature.

The next two related issues are:

Whether accused's oral statements were admissible in light of the failure to provide him with lawyer-counsel or timely to inform him that Major Merchant was not a lawyer.

Whether the evidence is sufficient to support the Government's heavy burden of demonstrating that accused knowingly, consciously, and intelligently waived his right to qualified counsel.

Appellate defense counsel contend that when a defendant desires representation by counsel, he means legally qualified counsel. It is improper to furnish a nonlawyer to an unsuspecting accused. Counsel must be one "who is peculiarly and entirely the accused's own representative; who owes him total fidelity; to whom full disclosure may be safely made in a privileged atmosphere; and from whom accused can learn with confidence a proper course of action." United States v Tempia, 16 USCMA 629, 639, 37 CMR 249.

Appellate defense counsel argue that Major Merchant was not a lawyer, that he did not discuss the elements of the offense with the accused, if indeed he knew the charge, that he advised the accused to confess, and that he did not believe an attorney-client relationship existed with the accused or that he was bound by the privilege.

This case, continue appellate defense counsel, is analogous to Escobedo v Illinois, 378 US 478, 12 L Ed 2d 977, 84 S Ct 1758 (1964), for in that case Escobedo was denied the right to consult with his lawyer. Further, failure to inform accused that Major Merchant was not a lawyer until after the solicitation of an incriminating statement was misleading and erroneous. The introduction of accused's pretrial statement seriously abridged the accused's constitutional rights and drastically violated the principles of *Miranda* and *Tempia,* supra, conclude the defense.

Appellate Government counsel respond that Adams was fully and correctly advised of his rights to a lawyer. He was also aware that Major Merchant was not a lawyer. His selection constituted a knowing, intelligent, and voluntary waiver of the right to a qualified lawyer. The evidence on this

point was conflicting but the issue was resolved by the court below.

Appellate Government counsel distinguish *Escobedo* as being a case where police · deliberately subverted that accused's attempts to consult with counsel, while here, Adams was given a choice free of any such collusion.

The point is also made by the Government that Major Merchant took his duties seriously, felt obligated to accused, did not tell him to confess but, rather, saw that the accused's rights were protected. Major Merchant was Adams's choice and the choice having been made, no one had the right or authority to question it, say the Government.

*Miranda v Arizona,* supra, and its military counterpart, United States v Tempia, supra, establish clearly that an accused is entitled to the presence of an attorney during an interrogation. Cf. United States v Brown, 13 USCMA 14, 32 CMR 14; United States v Powell, 13 USCMA 364, 32 CMR 364. The extent of the advice given Adams when he was in custody was a heavily litigated issue. On the one hand, Adams informed the court that he did not know "exactly" the difference between " 'counsel' " and " 'lawyer,' " for in his battalion the Commanding Officer appointed officers as "lawyer[s]" for summary courts-martial; that he wasn't sure of the charges until informed by the Battalion Commander four or five days later; that he had given his pretrial statement out of fear of being placed in a German jail; that on the morning of October 12 he was drunk; and that he didn't request the presence of Major Merchant when he gave his pretrial statement for the Major had done him no good. Finally, he stated that his interrogators who had testified to the contrary on these matters were, he "guess[ed]," lying.

The agents who questioned the accused gave evidence, both in court and during an out-of-court proceeding, showing that Adams had been first apprised of his rights as to both Article 31 and *Miranda* requirements

**443**

on October 12 after an early morning search of his quarters but before a lineup that followed in which the accused took part. During this interval, the accused was informed of his Article 31 rights and his right to counsel, including the explanation that "counsel" meant a qualified lawyer. The accused then made a request for Major Merchant, who appeared in his behalf during the lineup.

These agents related further that during the search made before the lineup the accused was told that he was suspected of an indecent assault. When Major Merchant appeared he was immediately told that the accused was suspected of an indecent assault. The accused, according to these witnesses, gave his pretrial statement because he wanted to tell the truth.

Indeed, as a defense witness during an out-of-court proceeding, Major Merchant related that he had conversed with the accused before the lineup after being informed of the accused's desires to have him act as counsel. At that time, the Major advised Adams that he was not a lawyer and that Adams had a right to one. Also, in private, he advised the accused that the authorities were concerned with an attempted rape and that accused should not lie for it was better to say nothing.

According to these revelations accused was properly warned both as to his right to a lawyer and of his rights under Article 31. His awareness that Major Merchant was not a lawyer causes us to believe that his choice of counsel was deliberate. His pretrial statement appears to be untainted by procedural error. The accused contradicted some of the evidence about the circumstances of the statement. The law officer's decision to admit the statement into evidence cannot be held erroneous as a matter of law. United States v Landrum, 17 USCMA 526, 38 CMR 324. Moreover, he then properly presented the issue to the court members for their determination. United States v Westmore, 17 USCMA 406, 38

**444**

CMR 204; United States v Odenweller, 13 USCMA 71, 32 CMR 71; cf. United States v Mewborn, 17 USCMA 431, 38 CMR 229.

At this juncture, the remaining issue becomes germane. It reads:

Whether the law officer erred prejudicially in failing to tailor his instructions on voluntariness to the issues presented regarding accused's understanding of his entitlements to a lawyer *vis a vis* Major Merchant.

It is the law officer's obligation and his alone to determine the charge to be given the court. United States v Nickoson, 15 USCMA 340, 35 CMR 312. In addition, United States v Acfalle, 12 USCMA 465, 31 CMR 51; United States v Thompson, 12 USCMA 438, 31 CMR 24; United States v Boultinghouse, 11 USCMA 721, 29 CMR 537; and United States v Gustafson, 17 USCMA 150, 37 CMR 414, are representative of the many instances where this Court has declared that the law officer's instructions must be tailored to the evidence and to the issues. And, he must do so correctly. United States v Nickoson, supra. The " 'tailoring' " of an instruction, the Court said in United States v Smith, 13 USCMA 471, 474, 33 CMR 3, is:

". . . the affirmative submission of the respective theories, both of the Government and of the accused on trial, to the triers of fact, with lucid guideposts, to the end that they may knowledgeably apply the law to the facts as they find them. A liberal application of this approach will avoid the possible pitfalls that may attend instructing on barren and abstract legal principles in a vacuum. In any case, it surely benefits both parties to a proceeding, and obviously enhances the quest for truth and justice in a truly enlightened atmosphere. As an example of the manner in which one trial court submitted an issue such as that presently before us, tailored to the facts of the case, and as illustrative of the care required in covering all aspects of the

case, we call attention to Meadows v United States, 82 F2d 881 (CA DC Cir) (1936)."

In the case at bar, the accused's testimony had two basic points of emphasis. One related to his lack of appreciation for the true meaning under prevailing circumstances of the word "'counsel.'" This contention had the added effect of negating the possibility of waiver. Although Adams indicated he was drunk, the deficiency here complained of is that he was not fully informed, rather than his being unable to understand because of his intoxication. The second factor emphasized was that he had given a pretrial statement coerced by the presence of German officials who wanted him in their custody.

The instruction given by the law officer here correctly pronounces the law and properly correlates the facts to the paramount issues. Being more than an abstract statement of law it was designed to assure an intelligent determination of the issues. United States v Smith, supra. It satisfied the standards imposed upon the law officer by the authorities set out above. United States v King, 17 USCMA 17, 37 CMR 281. The questioned instruction reads:

"You are further advised in this case that this out-of-court statement of the accused is not voluntary if it was obtained from the accused through the use of coercion, unlawful influence or unlawful inducement.

"You will also consider that it is not voluntary if while the accused was suspected of an offense the statement was obtained from him through the interrogation of a person subject to the Uniform Code of Military Justice who did not first ·inform the accused of the nature of the accusation, and advise him that he did not have to make any statement regarding the offense of which he was accused or suspected; that any statement made by him might be used as evidence against him in a trial by court-martial; and that he had the right to consult and have with him during the interrogation an attorney provided by him or an attorney appointed for him; and, further, if the statement was taken at an interrogation without the presence of *counsel,* that the accused freely, knowingly, intelligently and affirmatively waived his right to *counsel* and to remain silent.

"Gentlemen, coercion, unlawful influence or unlawful inducement would be present if an accused made an incriminating out-of-court statement as a result of prolonged questioning accompanied by deprivation of the necessities of life, such as food, sleep, or adequate clothing.

"Coercion, either physical or psychological,—as I have previously stated, counsel not being present without the conscious, intelligent waiver that I have discussed with you, the threat of imposition of confinement because a statement was not made by the accused with respect to the offense allegedly committed by him,—would be present if it was likely to induce the out-of-court statement from the accused in light of all the circumstances known to him at the time.

"However, an incriminating out-of-court statement by the accused is not rendered involuntary by a promise or threat which was not an effective cause of obtaining the statement.

"Ordinarily, the statement of the accused need not be rejected as being involuntary merely because it happened to have been made after a promise or threat which was of a trivial and insubstantial nature in the light of the known consequences of making the statement." [Emphasis supplied.]

In short, the Court is satisfied that under the circumstances depicted in this record of trial, the Government has successfully carried its burden of proving compliance with the requirements of Article 31, as well as those

445

of *Miranda v Arizona* and United States v *Tempia*, both supra.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

My brothers correctly acknowledge the obligation of the law officer to determine the charge to be given the court and his responsibility to properly tailor his instructions to the evidence and the issues. See United States v Nickoson, 15 USCMA 340, 35 CMR 312—discussion and cases cited at pages 343–344. It is with their determination that in this case the law officer satisfied this requirement that I strongly disagree.

The admissibility of the accused's oral pretrial statement, one of the granted issues, was vigorously contested during an out-of-court hearing.[1] In the main, it revolved about the fact that when the accused was informed of his right to the assistance of counsel, he asked to have Major Merchant, the executive officer, who was not a lawyer. *Miranda v Arizona*, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v *Tempia*, 16 USCMA 629, 37 CMR 249. At that time, accused was not informed by the Government agents of Merchant's nonlawyer status. Although prior to making the statement he allegedly became aware of this fact, he proceeded to disclose certain information without further request for a lawyer. His action in proceeding without the assistance of a lawyer is the basis for the defense contention that the evidence is insufficient to show a knowing, conscious, and intelligent waiver of this basic right. In this posture of the record, the defense asserts, the law officer's failure to tailor his instructions to the evidence and the issues prejudiced the accused. I agree.

*Miranda v Arizona* and its military counterpart, United States v *Tempia*, both supra, make it clear that a suspected accused is entitled to a *lawyer* upon request for counsel—one with whom he can establish an attorney-client relationship. As stated in *Tempia*, at page 639:

". . . a lawyer who is peculiarly and entirely the accused's own representative; who owes him total fidelity; to whom full disclosure may be safely made in a privileged atmosphere; and from whom accused can learn with confidence a proper course of action."

Even prior to *Miranda* and *Tempia*, this Court has held that furnishing a nonlawyer to an accused was insufficient compliance with a request for counsel. United States v Brown, 13 USCMA 14, 32 CMR 14; United States v Powell, 13 USCMA 364, 32 CMR 364. See also United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251. As we said in *Brown*, at page 17:

". . . We do not believe it can be gainsaid that the influence of a lawyer might be greater than that of his lay brother, whether the advice be the same or no."

In this case, while the investigating agents did not *furnish* the accused with Major Merchant, but merely acquiesced in his request, it is interesting to note that the military agent, who warned the accused of his right to a lawyer, testified in response to a direct question of defense counsel that "there was no requirement for me to tell him this man was not a lawyer."

Major Merchant testified that he took his duties seriously and felt obligated toward the accused. He told the accused he was not a lawyer but did not suggest that it might be better for him to have one. He did not consider himself as the accused's attorney and, hence, was not bound by the rule of confidentiality.[2] He cautioned the accused not to "weave a web of lies to these people" but to tell only

---

[1] Record of trial, pages 50–212.

[2] Major Merchant later signed the charges against the accused.

the truth, if the truth would set him free; otherwise he should be quiet. He felt that an attorney would essentially give him that advice. The accused did not implicate himself in the offense while he was there. He left when he thought the interrogation was over.

The accused denied that Major Merchant told him he was not a lawyer. When told he could have counsel he understood this advice to mean someone from his battalion who would inform him of what was going on. He knew of other soldiers who were given summary and special courts-martial who were assisted by officers from the unit. After Major Merchant left, he gave his statement because a German investigator said he was going to have to take the accused to a German jail. According to the accused, the American agents told him they could not prevent his going with the German agent unless he told them something they could believe. He was afraid of the German jail. He was not asked whether he wanted Major Merchant to come back.

The German agent testified that he told the accused he would have to take him for arraignment before a German judge. The American agents were present at the time, as was Major Merchant. The German agent left to make appropriate arrangements in the belief that American military police would escort the accused to the local police commissioner. While at the police station he was telephonically informed that the accused had confessed. That was sufficient to fulfill the purpose of his investigation.

The interrogating agents asserted that they did not hear the German agent tell the accused he was to be taken to a German jail. There was conversation concerning this matter but not in the accused's presence. When the accused indicated he wished to tell the truth he was specifically asked whether he wanted Major Merchant present. According to the agent's testimony the accused indicated he did not need him. Allegedly, he was told at this time, by one of the agents, that Major Merchant was not a lawyer.

The obligation of the law officer to instruct on contested confession issues goes beyond the bare bones legal requirements given by the law officer in this case as quoted in the majority opinion. United States v Nickoson, supra. Here, the Government evidence makes out a warning of right to counsel—counsel meaning a lawyer—and accused's knowing acceptance of the services of a nonlawyer-counsel. Accused, on the other hand, testified as to an inability to comprehend the import of the warning and his right to a lawyer, and an absolute denial that he was informed that Major Merchant was not a lawyer. He also asserted he made his statement because it was the only way to avoid being turned over to the German authorities. These theories should have been specifically marked out by the law officer in order for the court members to intelligently dispose of the issue. In United States v Smith, 13 USCMA 471, 474, 33 CMR 3, this Court defined the " 'tailoring' " of an instruction as:

". . . [T]he affirmative submission of the respective theories, both of the Government and of the accused on trial, to the triers of fact, with lucid guideposts, to the end that they may knowledgeably apply the law to the facts as they find them. A liberal application of this approach will avoid the possible pitfalls that may attend instructing on barren and abstract legal principles in a vacuum. In any case, it surely benefits both parties to a proceeding, and obviously enhances the quest for truth and justice in a truly enlightened atmosphere. As an example of the manner in which one trial court submitted an issue such as that presently before us, tailored to the facts of the case, and as illustrative of the care required in covering all aspects of the case, we call attention to Meadows v United States, 82 F2d 881 (CA DC Cir) (1936)."

See also United States v Odenweller, 13 USCMA 71, 32 CMR 71, and United States v Acfalle, 12 USCMA 465, 31 CMR 51.

Except for minor variations, the instructions given in this case are almost verbatim with that set forth in Appendix XXI, Department of the Army Pamphlet No. 27-9, Military Justice Handbook: The Law Officer, April 1958. While it might be contended that this instruction is a proper exposition of the *law* on the subject of the voluntariness of a confession, it hardly accords with the necessity to provide the court members with "lucid guideposts, to the end that they may knowledgeably apply the law *to the facts*." United States v Smith, supra, at page 474. (Emphasis supplied.) As said in United States v Powell, supra, at page 369:

". . . Attention to the law *and* to the facts is necessary if the members are to be properly guided in their deliberations."

Since I believe that the law officer prejudicially erred by failing to tailor his instructions on voluntariness to the issues presented, I would reverse the decision of the board of review as to the conviction for indecent assault and order a rehearing.

Since this case was argued before this Court prior to issuance of the Supreme Court's opinion in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), I would grant counsel, defense and Government, the opportunity to brief the issue of the applicability of that opinion to the facts of this case.