UNITED STATES, Appellee

v

MITCHELL L. ALDERMAN, Private, U. S. Marine Corps, Appellant

22 USCMA 298, 46 CMR 298

No. 26,342

May 25, 1973

 

*Captain D. A. Higley,* USMC, and *Lieutenant Thomas M. Geisler, Jr.,* JAGC, USNR argued the cause for Appellant, Accused. With him on the brief were *Commander George W. Powell,* JAGC, USN, *Lieutenant David C. Sellergren,* JAGC, USNR.

*Captain Donald B. Myers,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel G. L. Bailey,* USMC, and *Lieutenant E. Alan Hechtkopf,* JAGC, USNR.

## Opinion

QUINN, Judge:

Evidence of two previous convictions, one by summary court-martial and the other by special court-martial, was admitted against the accused at his trial before a military judge sitting as a special court-martial. The question presented by this appeal is whether the evidence was erroneously admitted because the convictions were invalid within the meaning of the decision of the United States Supreme Court in Argersinger v Hamlin, 407 US 25 (1972), which held that an accused is entitled to counsel at a trial at which he is sentenced to confinement.

The right to "assistance of counsel" in "all criminal prosecutions" by the federal government is assured by the Sixth Amendment of the United States Constitution. From time to time, the dimensions of the right have been redefined in decisions of the Supreme Court. Necessarily, this Court adheres to Supreme Court decisions. United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967).

In *Argersinger,* the Supreme Court rejected the idea that the scope of the right to counsel can appropriately be measured by classification of the particular crime with which the accused is charged as felony, misdemeanor, or petty offense. Instead of looking at the label attached to the offense, the Court looked at the consequence of conviction. It determined that "no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel" or knowingly waives his right to such representation. 407 US at 40. Measured by that standard, the Court concluded that Argersinger's conviction by a Florida court for an offense described as a petty offense because the authorized maximum confinement was six months and for which he had been sentenced to 90 days in jail was constitutionally invalid as Argersinger had been denied counsel for the trial.

██ The Uniform Code of Military Justice makes no provision for counsel for an accused in a summary court-

**22 USCMA 299**

martial. Article 27, Uniform Code of Military Justice, 10 USC § 827. See also Manual for Courts-Martial, United States, 1969 (Rev ed), paragraphs 6c and 48b. At the time of the accused's previous conviction, the Uniform Code provided for the appointment of counsel for special courts-martial, but not necessarily appointment of a lawyer in the sense of being a member of the bar of a federal or state court. Along with the general court-martial, these courts comprise the military criminal court system. Like the criminal courts in the civilian community, they determine guilt of criminal conduct and impose punishments therefor as prescribed by law. They are bound by the same limits of the right to counsel as bind the civilian courts. United States v Tempia, supra. Acceptance of *Argersinger's* percept, however, does not compel the conclusion that accused's previous convictions were *constitutionally* invalid.

■ Counsel is appointed for an accused in a civilian criminal court only if he is financially unable to pay for counsel of his own choice. Gideon v Wainwright, 372 US 335 (1963). In the military, the Uniform Code provides for appointed counsel, without regard to the accused's financial resources, and appointed counsel is required to serve even if the accused retains his own lawyer. Article 38(b), UCMJ, 10 USC § 838(b); United States v Jordan, 22 USCMA 164, 46 CMR 164 (1973). This pattern has been extended in practice to situations unmentioned in the Code, such as appointment of counsel for "custodial interrogation," MCM, paragraph 140a; United States v Decker, 16 USCMA 397, 37 CMR 17 (1966), and appointment of counsel to represent the accused in connection with a lineup in which the accused is required to participate, United States v Adams, 18 USCMA 439, 40 CMR 151 (1969); cf. Kirby v Illinois, 406 US 682 (1972); United States v Wade, 388 US 218 (1967). Considering these extensions of the Code's counsel provision to situations in which counsel may not have

been constitutionally required, because of the accused's financial resources, it is probable that Congress would provide for appointment of counsel in *Argersinger*-type cases without regard to the accused's ability to pay. However, as far as the constitutional right to counsel is concerned, the accused cannot properly maintain that his previous convictions were invalid unless he can demonstrate that he was, like Argersinger, "indigent" and entirely unrepresented by counsel. 407 US at 26.

■ No evidence in the record of each of the previous convictions indicates that the accused was indigent or unrepresented by counsel. Patently, further inquiry into these matters is essential before it can be said that the previous convictions are constitutionally invalid. If I were to assume compliance with the Uniform Code, the accused would at least have had appointed counsel at the special court-martial trial, unless he had expressly excused such counsel. Traditionally, the requirements for admission to a particular bar and the authority to practice before a particular court are determined, perhaps primarily, by the legislature of the jurisdiction, federal or state as the case may be, and, secondarily, by the judiciary. Annotation, Power of Legislature Respecting Admission to Bar, 144 ALR 150 (1942); cf. *Ex parte* Garland, 71 US (4 Wall) 333, 379 (1867). Consequently, if the accused was represented at the special court-martial by counsel having the qualifications prescribed by Congress, the constitutional requirement would be satisfied, notwithstanding counsel was not admitted to practice before a federal civilian court or a state court.

■ In his concurring opinion in *Argersinger*, in which he was joined by Justices Douglas and Stewart, Justice Brennan indicated that appointment as defense counsel of persons who are not lawyers in the traditional sense, but who have sufficient training and capability to render effective assistance as counsel, can satisfy the constitutional requirement for counsel, at

least in cases involving minor offenses. The opinion of Justice Powell, which had the concurrence of Justice Rehnquist, also appears to sanction such appointments. Although Justice Powell discussed the issue of counsel in terms suggesting that the right did not operate as extensively against the states under the due process clause of the Fourteenth Amendment as it did against the federal government under the Sixth Amendment, he concluded that appointed counsel was not required for an indigent accused unless the circumstances of the case indicated there were "complex legal and factual issues." 407 US at 47. Since Justices Powell and Rehnquist perceive no constitutional requirement for counsel in an *Argersinger*-type case, manifestly they would regard, as constitutionally proper, appointment of a person to assist the accused, who, while not a lawyer in the sense of being a member of the bar of a federal or state court, is familiar with, and has had training in, the law and practice as regards the charge against the accused. Apparently, therefore, a majority of the Supreme Court discern no constitutional impediment to appointment, for the trial of a minor offense, of a defense counsel who is not a lawyer in the traditional sense. This Court reached that result in United States v Culp, 14 USCMA 199, 33 CMR 411 (1963). Consequently, even if I disregarded the indigency of an accused as a condition to appointment of counsel for both a special and summary court-martial trial at which confinement will be adjudged, the appointed counsel, under *Argersinger,* would not have to be a lawyer in the traditional sense; but he would be required, as every counsel is, to render effective assistance. United States v Fisher, 8 USCMA 396, 24 CMR 206 (1957).

*Argersinger* postulated that the right to counsel is conditioned upon a sentence that "actually leads to imprisonment even for a brief period." 407 US at 33. The Court's repeated reference to actual confinement implies that a trial resulting in other types of punishment does not require appointment of counsel for the accused. Military law authorizes a form of limitation on freedom of movement known as restriction. Restriction can be imposed before trial, in lieu of arrest, to insure the accused's "continued presence" or to deter criminal activity pending disposition of the charge against him. MCM, pargaraph 20b. In the event of conviction, restriction can be imposed by the court-martial as punishment. MCM, 126g and 127c(2). Restriction may also be imposed after conviction and during the pendency of appellate review to assure accused's presence for "impending execution of a punitive dscharge." MCM, paragraph 20d(1). In each instance, the name is the same, but the legal significance of the status is different.

Except as the right to counsel exists during "custodial interrogation," Miranda v Arizona, 384 US 436 (1966), and in the particular situation considered in Escobedo v Illinois, 378 US 478 (1964), the Supreme Court has said that the accused's right "attaches only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v Illinois, supra at 688. Thus, pretrial arrest and confinement do not require that the accused be accorded counsel at the time of the imposition of restraint. This Court has held that pretrial restriction is comparable to pretrial arrest and confinement for the purpose of energizing the Government's obligation to proceed with reasonable dispatch to bring the accused to trial or risk dismissal of the charges against him for denial of his right to a speedy trial. United States v Smith, 17 USCMA 427, 38 CMR 225 (1968). Under *Argersinger,* confinement as punishment requires counsel; but restriction as punishment has such different consequences that it cannot properly be compared to it for the purpose of energizing the right to counsel.

■ Confinement removes the accused from his normal military environment; a sentence to restriction, however, cannot "operate to exempt the person . . . from any military duty." MCM, paragraph 126g. Sub-

ject to regulations of the Secretary of the accused's service, confinement imposed upon an enlisted person above pay grade E–1 reduces him automatically to pay grade E–1, Article 58a (a), UCMJ; a sentence to restriction does not have that effect. Confinement may entail hard labor, Article 58(a), UCMJ; restriction requires no labor other than that for regular military duties. Essentially, "a punitive restriction is a 'deprivation of privileges.'" United States v Modessett, 9 USCMA 152, 154, 25 CMR 414, 416 (1958). These significant differences between confinement and restriction convince me that the two punishments are not comparable in severity or stigma. Although at one point in its opinion in *Argersinger* the Supreme Court declined to rule on whether a sentence providing for punishment other than confinement is affected by its decision, it concluded its opinion with the observation that the "run of misdemeanors [those not ending in actual deprivation of a person's liberty] will not be affected by . . . [its] ruling." 407 US at 40. *Argersinger* clearly postulates that the right to counsel arises only when "imprisonment . . . [is] imposed." Id. As indicated, restriction as punishment bears no resemblance to confinement as punishment. I conclude, therefore, that an accused on trial in a minor military tribunal has no right to appointed counsel when the contemplated sentence includes restriction, not confinement.

■ *Argersinger* dealt with the validity of findings of guilty in a case in which the accused was entitled to, but was denied, representation by counsel. This case is concerned with a different question, specifically, the admissibility of evidence of a previous conviction obtained at a trial at which the accused was improperly denied the right to counsel. That question was considered by the Supreme Court in United States v Tucker, 404 US 443 (1972). There, the Court determined that reversible error was committed by the trial judge in the imposition of sentence, when he considered evidence of two previous convictions that were constitutionally infirm because the accused had been unrepresented by counsel at the trial at which each conviction was obtained, and he had not waived the right. The Court's opinion makes plain that the trial judge's error in considering evidence of the invalid convictions did not alone require reversal; also to be considered was whether "the sentence . . . might have been different if the sentencing judge had known that . . . the respondent's previous convictions had been unconstitutionally obtained." 404 US at 448. Our cases are to the same effect. United States v Johnson, 6 USCMA 320, 20 CMR 36 (1955); United States v Reed, 2 USCMA 622, 10 CMR 120 (1953). Error in the admission of evidence of previous conviction is not itself sufficient to justify reversal; it must also appear there is a fair risk that the evidence influenced the trial court to impose the sentence it did. If prejudice is not apparent, the error is harmless and can properly be disregarded.

■ Here, the accused was convicted of a 13-day unauthorized absence. The regular maximum punishment for that offense is confinement at hard labor for 6 months and partial forfeitures for the same period. On proof of two or more previous convictions, the allowable punishment is increased to include a bad-conduct discharge. MCM, Table of Maximum Punishments, Section B. As the accused's sentence includes a bad-conduct discharge, it is obvious that the trial judge gave effect to the previous convictions. Consequently, if either of the convictions is invalid because the accused was deprived of the right to counsel, the sentence must be reassessed. United States v Tucker, supra; United States v Pope, 5 USCMA 29, 17 CMR 29 (1954).

■ I indicated earlier that further inquiry must be made to determine whether the accused was deprived of his constitutional right to counsel. An inquiry of that kind can better be conducted by the Court of Military Review than by this Court. See United States v DuBay, 17 USCMA 147, 37

CMR 411 (1967). Accordingly, I would return the record of trial to the Court of Military Review for such further inquiry, or if that is undesirable, to reassess the sentence, without consideration of the evidence of previous convictions. Since my brothers do not share my view as to the need for further inquiry, Judge Duncan and I agree that the record of trial must be remanded to the Court of Military Review at least for reassessment of the sentence. Accordingly, the decision of the Court of Military Review as to the sentence is set aside and the case is returned to it for redetermination of the sentence without consideration of the evidence of the summary court-martial conviction.

DUNCAN, Judge (concurring in part and dissenting in part):

I believe that the court erred in admitting the summary court-martial conviction into evidence.

Beginning with the premise, as I do, that with certain exceptions criminal constitutional standards announced by the United States Supreme Court are applicable as precedent to this Court, a federal court, unless there is demonstrated a military necessity demanding nonapplicability, the constitutional determination reached in Argersinger v Hamlin, 407 US 25 (1972), applies to criminal actions brought within the system of military justice. The record contains no evidence which convinces me that application of the *Argersinger* rule should not be followed in our system because of military necessity. Conversely, it has come to our attention that both the United States Air Force and United States Army currently apply the ruling to summary court-martial procedures. See Henry v Warner, No. 73-354-DWW (CD Cal April 13, 1973).

In *Argersinger*, the Chief Justice of the United States, in a concurring opinion, stated:

Were I able to confine my focus solely to the burden that the States will have to bear in providing counsel, I would be inclined, at this stage of the development of the constitutional right to counsel, to conclude that there is much to commend drawing the line at penalties in excess of six months' confinement.

407 US at 41. Likewise, if I were able to ignore the constitutional message in *Argersinger* I would be inclined to continue to accept and vouchsafe the procedures for summary courts-martial as provided by Congress. However, the significance of my philosophical approach to the relationship of this Court to Supreme Court decisions renders that inclination nonactionable.

The Chief Judge of this Court may well be accurate in his appraisal that perhaps the *Argersinger* court did not give a thought as to whether or not its decision would have an adverse impact upon military justice. But if this logic is to be followed it would lead to the principle that this Court would only follow the constitutional determinations of the Supreme Court wherein it is shown that it had specific concern for military justice. I cannot accept that kind of a condition to the implementation of constitutional standards; furthermore, I believe a majority of this Court has rejected that philosophy. See United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967); United States v Jacoby, 11 USCMA 428, 29 CMR 244 (1960).

Argersinger v Hamlin, supra, as I understand it, permits the adjudication of so-called minor criminal offenses with two grades of justice. First, the Court held that "no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel." 407 US at 40. The various opinions of the members of the Supreme Court premise this restriction on imprisonment upon the Sixth Amendment right of an accused to be represented by counsel, or upon the Fifth Amendment right to be afforded due process of law. Unless represented by counsel, the Court decides that the quality of justice is not constitutionally adequate to permit imprisonment upon conviction.

The Court in *Argersinger* was not faced with and did not decide whether counsel is necessary for a conviction

when no punishment is imposed; therefore, the constitutionality of such a conviction remains undecided.[1] As a result, the second aspect of *Argersinger* remains to permit a trial and conviction of an accused for a minor offense when he is not represented by counsel in those cases where there is no sentence to confinement. Briefly stated another way, presently a person can be convicted of some minor offenses in proceedings characterized by a lower quality of justice.

Some rather strange results are posed for our system of justice under the *Argersinger* rationale. At a summary court-martial a lawyer would be necessary if the accused were to be sentenced to one day's confinement. A lawyer would not be necessary if an accused were to be reduced in rank and caused to forfeit a portion of his pay, which may be the more detrimental sanction.

Other somewhat bizarre results are possible. Pursuant to the Manual for Courts-Martial, United States, 1969 (Revised edition), in certain circumstances a summary court-martial conviction can be used in aggravation of punishment after a subsequent court-martial conviction. Moreover, in certain instances, maximum permissible punishment may be escalated because of a prior conviction by summary court-martial. If we were to hold that a person tried, convicted, and *sentenced to confinement* by summary court-martial can apply the *Argersinger* rule to completely void the conviction, then obviously it cannot be used as a matter in aggravation or as a matter to trigger an escalation of maximum punishment in a subsequent court-martial. But for a person who is tried, convicted, but not sentenced to confinement, because he is unrepresented by counsel at a summary court-martial, his conviction can be used for both of the purposes mentioned above. Generally speaking, the American concept of criminal sanctions suggests that only those persons who have committed the more serious offenses are imprisoned. The climax of this scenario appears to be that under the view which would void only convictions followed by imprisonment, a person, unrepresented by counsel, who has committed a less serious crime, has the potential for having that conviction later used against him; however, the person who has committed in all probability the more serious crime but was not represented by counsel will enjoy immunity against the subsequent use against him of a conviction which is void for want of counsel.

Like the *Argersinger* court, in the case today we need not consider constitutional requirements in cases where lesser crimes are charged, and there is no representation of the accused by counsel, and no sentence to imprisonment. Like Mr. Justice Powell, concurring in the result in *Argersinger*, wherein he points out a number of somewhat illogical results of the decision, I believe the result I reach herein has much the same potential for the creation of problems for military justice. Nevertheless, under the facts of this case and reading *Argersinger* as I do, I am presently unwilling to extend that rule to hold that the constitution requires counsel for an accused at *all* summary court-martial proceedings.

I cannot read *Argersinger* to hold that only the sentence to confinement rather than both the finding of guilty (conviction) and sentence are constitutionally invalid. First, if only the sentence to confinement is constitutionally invalid, it would appear that the Sixth Amendment right to be rep-

---

[1] Two justices spoke to this problem. Mr. Justice Douglas, for the majority, stated:
> We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail.

407 US at 37. Mr. Justice Brennan, concurring, stated:
> Thus, although the new rule is extended today only to the imprisonment category of cases, the Court's opinion foreshadows the adoption of a broad prophylactic rule applicable to all petty offenses.

407 US at 52.

resented by counsel or the due process of law requirement could be satisfied by the representation of counsel after conviction and during the sentencing procedure. In my judgment the *Argersinger* result is not so shallow.

Mr. Justice Douglas' opinion evidenced concern for the entire trial process, not just the sentencing phase. In *Argersinger* he states:

> We reject, therefore, the premise that since prosecutions for crimes punishable by imprisonment for less than six months may be tried without a *jury*, they may always be tried without a *lawyer*.
>
> The assistance of counsel is often a requisite to the very existence of a *fair trial*.
>
> • • • • •
>
> The requirement of counsel may well be necessary for a *fair trial* even in a petty-offense prosecution. *We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more.* See, e. g., *Powell v Texas*, 392 US 514 (1968); *Thompson v Louisville*, 362 US 199 (1960); *Shuttlesworth v Birmingham*, 382 US 87 (1965).
>
> The trial of vagrancy cases is illustrative. While only brief sentences of imprisonment may be imposed, the cases often bristle with thorny constitutional questions. See Papachristou v Jacksonville, 405 US 156 (1972). (Emphasis added.)

407 US at 30, 31, 33. He further cites, 407 US at 34, 35, The Report by the President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 128 (1967):

> Inadequate attention tends to be given to the individual defendant, whether in protecting his rights, sifting the facts *at trial*, deciding the social risk he presents, or determining how to deal with him after conviction. The frequent result is futility and failure. (Emphasis added.)

Concluding his opinion, Mr. Justice Douglas states, 407 US at 40:

> The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of "the guiding hand of counsel" so necessary when one's liberty is in jeopardy.

The necessity that the accused will receive the "'guiding hand of counsel'" suggests that the constitutional message is that unless an accused is represented by counsel throughout the trial proceeding no imprisonment may be meted out as a sanction.

Chief Justice Burger, concurring in the *Argersinger* result, states:

> The *issues* that must be dealt with in a *trial* for a petty offense or a misdemeanor may often be simpler than those involved in a felony trial and yet be beyond the capability of a layman, especially when he is opposed by a law-trained prosecutor. There is little ground, therefore, to assume that a defendant, unaided by counsel, will be any more able adequately to defend himself against the lesser charges that may involve confinement than more serious charges. Appeal from a conviction after an *uncounseled trial* is not likely to be of much help to a defendant since the die is usually cast when judgment is entered on an uncounseled trial record. (Emphasis added.)

407 US at 41. Again, the expressed concern is for the fairness of the *entire trial*.

Mr. Justice Powell, concurring in the result, forewarns anomalies in the trial of lesser offenses. He comments:

> Since the services of counsel may be essential to a fair trial even in cases in which no jail sentence is imposed, the result of this type of pretrial judgment could be arbitrary and discriminatory.

407 US at 54. Mr. Justice Powell speaks of his understanding of the rule in terms that the services of counsel "may be *essential to a fair trial.*"

In reaching their conclusion, Chief Justice Burger, Mr. Justice Douglas, Mr. Justice Brennan, with whom Mr. Justice Douglas and Mr. Justice Stewart join, cite Gideon v Wainwright, 372 US 335 (1963), and Powell v Alabama, 287 US 45 (1932). In those cases the constitutional malady of the denial of counsel rendered the entire proceeding invalid.

Acceptance of logic that summary courts-martial convictions where there was no representation of the accused by counsel and the accused was sentenced to imprisonment does not void the conviction, I feel, inaccurately appraises the position of the Supreme Court in *Argersinger. Argersinger* is a rule which articulates a constitutional demand that the *entire trial* of a case when an accused is sentenced to be imprisoned can only be met by providing the accused representation of counsel or securing his waiver.

I am unable to accept the possibility that where an accused is imprisoned after a trial at which the requirements of *Argersinger* were not complied with, his conviction remains intact, and only his imprisonment is impermissible. Stated another way, I think it impermissible to have a criminal conviction where an accused is denied his Sixth Amendment right or due process right to be represented by counsel. See Henry v Warner, supra; Cordle v Woody, 350 F Supp 479 (ED Va 1972); Daigle v Warner, 348 F Supp 1074 (D Haw 1972); Ramirez v Texas, 486 SW2d 373 (Tex Crim App 1972).

I agree with Judge Quinn that under the rule of United States v Tucker, 404 US 443 (1972), evidence of previous convictions obtained at a trial at which an accused was improperly denied representation of counsel is inadmissible for consideration of an accused's sentence.

I am constrained to state that I feel that under the system of military justice, the concept of indigency is of no real relevancy. Upon entry into military service, I believe, that if there is a right of counsel according to law then counsel must be furnished all members regardless of their financial status. "[N]o service man appears before a court-martial alone and there are no 'indigents' before courts-martial." United States v Culp, 14 USCMA 199, 202, 33 CMR 411, 414 (1963). Of course, it is an accused's right pursuant to law to procure individual military or civilian counsel of his own choice. Therefore, I disagree that this accused's assertion of the invalidity of his previous conviction is conditioned upon his demonstration of indigency.

Since there is no evidence that Alderman was represented by anyone *exclusively* acting in his behalf at any previous summary courts-martial, I do not reach the question of the qualification of a counsel necessary to satisfy the constitution.

Without belaboring the matter of retroactivity of the *Argensinger* rule, I conclude that inasmuch as it concerns the constitutional integrity of the factfinding process, it is to be applied retroactively. See Robinson v Neil, 93 S Ct 876 (1973); Linkletter v Walker, 381 US 618 (1965).

In the case at bar, I would hold the previous conviction invalid, and the record of trial returned to the Court of Military Review for further proceedings consistent with this opinion.

Darden, Chief Judge (dissenting):

I

Our recognition that the Supreme Court is the final arbiter of constitutional construction and that its decisions are binding on this Court does not solve the problems this case presents. The real issues are whether the Sixth Amendment right to counsel, as construed by the Supreme Court in Argersinger v Hamlin, 407 US 25 (1972), applies to summary courts-martial and, if so, whether denial of that right prohibits the use of a summary court-martial conviction in another trial as evidence in aggravation of punishment.

Congressional enactments deserve

deference in determining the balance that must be struck between the protection of an accused's constitutional rights and the needs of military discipline. As the Supreme Court stated in Burns v Wilson, 346 US 137, 140 (1953):

> Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers expressly entrusted that task to Congress.

Mr. Chief Justice Vinson went on to state that military courts "have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights." Id. at 142. But, in a later opinion by Mr. Justice Black, one of the dissenters in *Burns*, the Supreme Court declared, "As yet it has not been clearly settled to what exent the Bill of Rights and other protective parts of the Constitution apply to military trials." Reid v Covert, 354 US 1, 37 (1957). Compare Henderson, *Courts-Martial and the Constitution: The Original Understanding*, 71 Harv L Rev 293 (1957), with Wiener, *Courts-Martial and the Bill of Rights: The Original Practice*, 72 Harv L Rev 1, 266 (1958).

This Court has not followed the dictum in the separate opinion of Mr. Chief Justice Chase in *Ex parte* Milligan 71 US (4 Wall) 2, 138 (1866), that "the power of Congress in the government of the land and naval forces . . . is not at all affected by the fifth or any other amendment." Instead, it has declared that the provisions of the Bill of Rights, except those expressly or by necessary implication inapplicable, are available to members of our armed forces. United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967); United States v Culp, 14 USCMA 199, 33 CMR 411 (1963); United States v Jacoby, 11 USCMA 428, 29 CMR 244 (1960). And the Court has implemented this declaration by applying it to strike down the practice of taking depositions upon written interrogatories in the absence of the accused and his counsel; to require full advice as to counsel rights in compliance with the Supreme Court's construction of the Fifth Amendment in Miranda v Arizona, 384 US 436 (1966); and to consider the constitutional implications of the requirement of counsel in serious criminal cases. See United States v Tempia, supra; United States v Culp, supra; and United States v Jacoby, supra.

But the Court's decisions have not applied specific provisions of the Bill of Rights to military law without regard for their effect on the mission of the armed forces and the basic reason for their existence. Rather, we have recognized the need for balancing the application of the constitutional protection against military needs. Thus, we stated in United States v Priest, 21 USCMA 564, 570, 45 CMR 338, 344 (1972):

> The armed forces depend on a command structure that at times must commit men to combat, not only hazarding their lives but ultimately involving the security of the Nation itself. Speech that is protected in the civil population may nonetheless undermine the effectiveness of response to command. If it does, it is constitutionally unprotected.

Our recognition of this limiting factor is not unique. The Supreme Court earlier had pointed out that:

> Unlike courts, it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise. But trial of soldiers to maintain discipline is merely incidental to an army's primary fighting function. To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is

not served. And conceding to military personnel that high degree of honesty and sense of justice which nearly all of them undoubtedly have, it still remains true that military tribunals have not been and probably never can be constituted in such way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts.

United States *ex rel.* Toth v Quarles, 350 US 11, 17 (1955). See also Reid v Covert, supra at 39.

The armed forces of today are substantially different in size and nature from their composition at the time of Chief Justice Chase's dictum in *Ex parte* Milligan, supra. During a war or national emergency, the existence of authority for involuntary induction causes the armed forces to consist of hundreds of thousands of persons who are basically civilians serving only temporarily. The current objective is an all volunteer force. But discipline must exist for an effective fighting force, irrespective of whether that force is a relatively small one composed of many persons intending a career of military life or a larger one that is predominantly civilian in orientation.

The armed forces have long had authority for subjecting members to short periods of confinement without implicating counsel who perform in more serious kinds of courts-martial. Correctional custody may be imposed under the provisions of Article 15, Uniform Code of Military Justice, 10 USC § 815, and confinement up to 30 days may constitute the sentence of a summary court-martial.[1] The comparative punishment limits of summary courts and Article 15 proceedings may not be sufficiently different to justify the continued existence of summary courts, but Congress has determined that both are essential to the maintenance of military discipline by providing a rapid means of summary punishment for minor infractions of military law. And in any judicial system speedy justice often has the effect of returning the offender to future compliance with societal norms.

It is not our task to evaluate the harmful effect on discipline of the application of *Argersinger's* requirement that an accused be represented by counsel before a summary court may impose confinement. As the Supreme Court said in Burns v Wilson, supra at 140, "The Framers expressly entrusted that task to Congress." Congress as an institution has superior fact-finding machinery to predict or to measure impact on discipline and to take corrective action if the result is unacceptable. This Court possesses no special competence to evaluate the effect of a particular procedure on morale and discipline and to require its implementation over and above the balance struck by Congress.[2] My own experience is that nothing in the life of a judge as a judge qualifies him to override the

---

[1] While it may be argued that counsel should be required for summary courts-martial since they constitute criminal convictions and not for Article 15 proceedings as they are non-judicial and corrective in nature, the effect of confinement under the former and correctional custody under the latter is difficult to distinguish. See In re Gault, 387 US 1 (1967). Consequently, I would have difficulty in sustaining the position that while counsel must be provided before summary courts-martial, they may be dispensed with in Article 15 proceedings that may result in correctional custody.

[2] Even if due process as applied to military personnel were something less than civilian due process, expansion of judicial control would mean that the judiciary, and not the Congress, would balance the rights of the individual against the necessities of discipline. The danger is not only that the courts will be insensitive to military requirements and arrive at mistaken conclusions by applying experience gained in administering a criminal law designed for deterrence to a system designed to inculcate positive discipline, but that erroneous decisions will have the rigidity of a constitutional determination.

Note, *Constitutional Rights of Servicemen Before Courts Martial*, 64 Colum L Rev 127, 148 (1964).

congressional determination that counsel before summary courts would introduce time-consuming or cumbersome procedures counteracting the objective of swift reaction to minor offenses.[3]

Nothing in the *Argensinger* opinion gives the slightest hint that the members of the Supreme Court contemplated that this decision would be applied to members of the armed forces. If Supreme Court decisions of this type are to be applied in a military context, that Court, rather than this one, should direct it. Only then will it be able to balance military needs against competing considerations. For example, the several opinions in *Argersinger* provide suggestions about how the new requirement for counsel may be met, including representation by law students under adequate supervision. Since *Argersinger* addressed only civilian trials, understandably none of the opinions reflects an awareness that the military departments do not have available to them enough military lawyers to implement the decision.[4] And, for the same understandable reasons, the case does not discuss the complications of applying the requirement for counsel to the world-wide administration of military justice.

These considerations lead me to conclude that, short of a direct holding by the Supreme Court that a military accused cannot constitutionally be sentenced to short periods of confinement by a summary court-martial unless he is represented by counsel, our proper course is to continue to honor the congressional judgment that no such representation is required.

## II

But assuming the applicability of the *Argersinger* doctrine to summary court convictions, I see no reason to invalidate the use of prior convictions by summary courts in other trials.

The manual for Courts-Martial, United States, 1969 (Rev ed), paragraph 75b(2), permits the introduction in aggravation of punishment of "any previous convictions of the accused by courts-martial" that relate to offenses committed within a 6-year period next preceding the commission of any offense of which the accused stands convicted at his present trial. Under certain circumstances, proof of previous convictions may also serve to increase the maximum permissible punishment. MCM, para 127c. See also United States v Prescott, 2 USCMA 122, 6 CMR 122 (1952).

Argersinger v Hamlin, supra, does not invalidate the conviction of a defendant who was not provided with counsel during his trial. It speaks only in terms of prohibiting the imposition of a sentence to confinement without the accused's having the assistance of counsel during the trial. The Court's opinion states:

> We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

407 US at 37.

The Court went on to say, "Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprison-

---

[3] Following testimony that summary courts should be abolished, Congress struck a balance by providing that no accused could be tried by a summary court over his objection. S Rep No 486, 81st Cong, 1st Sess 13 (1949). The objection would lead either to dismissal of the charges or to trial by special or general court-martial in which case he would be provided counsel. Articles 20, 27, Uniform Code of Military Justice, 10 USC §§ 820, 827.

[4] Although the functioning of the draft law resulted in the armed forces having the temporary services of many capable young lawyers who elected to serve for longer than the minimum draft period, too few have been attracted to military careers. Even with the benefit of their service, the Department of Defense has had shortages of experienced military lawyers. The ending of the military draft is likely to hinder the procurement of adequate numbers of even inexperienced lawyers.

ment may be imposed, even though local law permits it, unless the accused is represented by counsel." Id. at 40. Finally, action on the case was reversal of the Florida Supreme Court's denial of a writ of habeas corpus, the granting of which would have the effect of freeing Argersinger from his confinement in the hands of Sheriff Hamlin.

Unlike the result in Gideon v Wainwright, 372 US 335 (1963), involving felony trials, the Court did not void a misdemeanant's conviction but interposed a constitutional prohibition against deprivation of liberty without counsel. *Gideon* voided the entire trial and a consequence was to forbid the later use of the void conviction in aggravation of sentence. United States v Tucker, 404 US 443 (1972). Under *Argersinger*, the conviction remains valid. Only the sentence to confinement is interdicted. An accused therefore is left with a conviction against him with only a part of his punishment set aside. From *Argersinger's* language, on remand the trial judge apparently would not be compelled to retry a defendant but constitutionally could resentence him to a penalty not involving deprivation of liberty.

As the conviction is not affected by the failure to provide counsel to the accused, I perceive no sound basis for forbidding its use at another court-martial in aggravation of sentence or to support an increased maximum sentence. For such purposes, the significant consideration is that the accused's conduct has resulted in his receiving earlier punishment, the form of such punishment not being important in the later proceeding. In military law, it is the conviction that counts, rather than the sentence. Since the Supreme Court has not held such a procedure to be constitutionally invalid, I would continue to permit its use in the circumstances of this case.

I would affirm the decision of the United States Navy Court of Military Review.