CRAWFORD, Chief Judge
(concurring in the result):
While I agree with the majority that there was a waiver in this case, I write separately because I believe this Court has a judicial obligation to follow Supreme Court precedent regarding the right to counsel, absent a provision in the Manual for Courts-Martial, United States (2002 ed.) or military necessity *315 for doing otherwise. The Court is not an ombudsman which can decide the result it wants, and then pick and choose from the Superior Court’s precedents to suit that result. Nor may it act as a policy maker or legislator. By arbitrarily deciding when and whether to follow the constitutional precedents of the Supreme Court, this Court not only undermines the legitimacy of its adjudication, but also undermines public confidence in the stability and predictability of military justice.
When the Supreme Court interprets the Bill of Rights, this Court is bound by those rulings and their rationales unless they can be distinguished. By the same token, when the Supreme Court specifically holds that the right to counsel does not apply, this Court is not at liberty to reject that decision. As to the right to counsel, this Court applied the rationale of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in holding that, absent representation by counsel, or waiver of the right to counsel, a summary-courts martial would not be admissible during the sentencing procedures or for any other purpose. United States v. Alderman, 22 C.M.A. 298, 46 C.M.R. 298 (1973). However, when the Supreme Court was specifically faced with that issue, it held that the right to counsel did not apply at summary courts-martial. Middendorf v. Henry, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). This Court is not at liberty to disregard that holding.
It is important to describe in detail this Court’s history of selectively applying Supreme Court precedent as to the right to counsel. First, in Alderman, this Court adopted the Supreme Court rationale in Argersinger, 22 C.M.A. at 299-300, 46 C.M.R. at 299-300. Although Argersinger was a civilian habeas action and did not address summary courts-martial, this Court, in Alderman, extrapolated from Argersinger a requirement for a waiver of counsel or representation by counsel at summary courts-martial for its results to be admissible at a subsequent court-martial. Four years later, the Supreme Court in Middendorf held that Argersinger did not apply to summary courts-martial. Nevertheless, the very next year this Court refused to follow the Supreme Court and rejected the Middendorf holding and rationale in United States v. Booker, 5 M.J. 238 (C.M.A.1977)(Roofcer I). In so doing, this Court in Booker I implicitly created a right to counsel at a summary courts-martial by holding
that absent waiver of counsel or representation by counsel:
(1) the escalator clause would not apply to summary courts-martial;
(2) a summary courts-martial conviction was not admissible for sentencing;
(3) Article 15s were not admissible for sentencing; and
(4) Article 15s and summary courts-martial were limited to military-type offenses.
United States v. Kelly, 45 M.J. 259, 266 (C.A.A.F.1996) (Crawford, J., dissenting).
In United States v. Booker, 5 M.J. 246 (C.M.A.1978)(Boofcer II), the Court reconsidered Booker I and held that Article 15s and summary courts-martial were not limited to military-type offenses. In United States v. Mack, 9 M.J. 300, 311 (C.M.A.1980), the Court revisited the Booker I rationale and, in a 1-1-1 opinion, sought to justify its rejection of Middendorf by applying the escalator clause based on Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). When the Supreme Court later removed the Baldasar underpinnings in Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), this Court was once again faced with the opportunity to apply current Supreme Court precedent with respect to the right to counsel. Yet, it refused to do so in Kelly, 45 M.J. at 264, and continued this Court’s selective application of constitutional precedents of the Supreme Court.
Now, once again this Court has the opportunity to correct its prior misapplication of Supreme Court decisions. Sadly, however, not only does the majority continue this Court’s selective application of constitutional precedents established by the Supreme Court, but now the majority also seeks to justify its position by creating a new “important stage” analysis. It is unclear what this “important stage” analysis means to practi *316 tioners. In the future it might be compared with the “critical stage” analysis which has been employed by the Supreme Court in numerous cases. Neither the “critical stage” analysis nor its possible new military analog was mentioned or cited in the Middendorf case. At the time of adopting the Uniform Code of Military Justice, Congress knew the import of various decisions and the rights available to the accused at a summary court-martial, and the duties and responsibilities of the summary court-martial officer. And at the time of Middendorf, the Supreme Court knew the consequences that could result from a summary court-martial and the potential for greater punishment if the accused opted to object to the summary court-martial. Yet, the Supreme Court still held that the right to counsel does not apply at the summary court-martial.
The accused’s option to obtain greater rights at a proceeding is not unique to the military, but is also present in both the state and federal systems. For example, the defendant who appears before a United States federal magistrate judge in a misdemeanor case has the right to be tried before a United States district court judge, including a jury panel. But there is no requirement that because this option is available, there must be an advisement of the right to consult with counsel before opting for a trial before a district court. In the magistrate court versus district court arena, the defendant may opt for a district court judge or a jury subjecting him or her to a potential greater punishment. Even so, it was not the potential greater punishment, but rather the punishment that may be imposed at the magistrate judge court level or misdemeanor court level on which the Supreme Court relied in determining when an individual is entitled to counsel.
In addition to the legal reasons already mentioned, there are practical reasons for why we should reexamine Booker I and Mack. The majority undermines truth in sentencing by denying the sentencing authority a true picture of the Appellant’s record. The military employs very comprehensive sentencing procedures which allow the defense to introduce extensive evidence in extenuation and mitigation, as well as grant the accused expansive allocution rights. The Government should likewise be able to present a full picture and not be undercut by this Court’s refusal to apply Supreme Court decisions.
Furthermore, our forces are deployed worldwide fighting the war on terrorism, and as a result, judge advocates are fully engaged not only in the military justice arena, but also in operational law, legal assistance, and numerous other complex legal fields, at camps, bases, and fleets serving by their side. The number of lawyers available is limited. Many of these are in resident training, or serving in non-legal billets, and thus unavailable for varying periods of time to discharge legal duties. 54 M.J. CXXXIII, at CXLV. By continuing implicitly to impose on the services by judicial decree a right to counsel prior to accepting Article 15s and summary courts-martial, this Court usurps the legislative and executive powers and does what both Congress and the President have elected not to do: further burden commanders and senior legal officers in their resolution of operational matters. As the Supreme Court stated in Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 97 L.Ed. 842 (1953):
[Jjudges are not given the task of running the Army____ Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters.
For these reasons, I must respectfully decline to join the majority opinion.