UNITED STATES, Appellee

v.

Caleb B. BEATY, Airman First Class
U.S. Air Force, Appellant

No. 10-0494

Crim. App. No. 37478

United States Court of Appeals for the Armed Forces

Argued December 2, 2010

Decided April 26, 2011

RYAN, J., delivered the opinion of the Court, in which
EFFRON, C.J., and ERDMANN and STUCKY, JJ., joined.  BAKER,
J., filed a separate dissenting opinion.


Counsel

For Appellant:  Major Darrin K. Johns (argued); Lieutenant
Colonel Gail E. Crawford (on brief); Major Shannon A.
Bennett.

For Appellee:  Major Jamie L. Mendelson (argued); Gerald R.
Bruce, Esq. (on brief).

Military Judge:  W. Thomas Cumbie


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Beaty, No. 10-0494/AF

Judge RYAN delivered the opinion of the Court.

Pursuant to his plea, Appellant was convicted by a military judge sitting as a general court-martial on a single specification charged under clauses 1 and 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). The specification charged that Appellant:

> did, at or near Hurlburt Field, Florida, between on or about 12 May 2008 and on or about 22 July 2008, on divers occasions, wrongfully and knowingly possess one or more visual depictions of what appears to be a minor engaging in sexually explicit conduct, which conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the Armed Forces.

Appellant was sentenced to a reduction in grade to E-1, confinement for ten months, and a bad-conduct discharge. The convening authority approved the adjudged sentence, and the Air Force Court of Criminal Appeals (CCA) affirmed. United States v. Beaty, 2010 CCA LEXIS 123, at *7, 2010 WL 4025786, at *2 (A.F. Ct. Crim. App. Mar. 25, 2010). We granted review on the following issue:

> WHETHER THE SENTENCE MUST BE SET ASIDE BECAUSE THE MILITARY JUDGE DETERMINED THE SENTENCE BASED ON THE INCORRECT MAXIMUM PUNISHMENT.

United States v. Beaty, 69 M.J. 199 (C.A.A.F. 2010) (order granting review).

2

Unlike the specification and charge in <u>United States v. Leonard</u>, 64 M.J. 381 (C.A.A.F. 2007), the specification in this case charged that Appellant possessed "what appears to be" child pornography.  The military judge calculated a maximum punishment of ten years of confinement by reference to 18 U.S.C. § 2252 (2006), which criminalizes possession of images involving the "use of a minor engaging in sexual conduct."  § 2252(a)(4)(B).[1]  The CCA held that a maximum punishment of ten years of confinement was appropriate by reference to the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2252A (2006), which was amended to excise the "appears to be" language in light of the Supreme Court's decision in <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002), <u>see</u> PROTECT Act, Pub. L. No. 108-21, tit. V, § 502(a)(1), 117 Stat. 650 (2003), and criminalizes only possession of an image that is or is "indistinguishable from"[2] a minor engaging in sexually explicit conduct.[3]  <u>See</u>

---

[1] Although the military judge did not state which subsection of § 2252 he relied upon, the only conduct for which a ten-year maximum sentence is authorized under § 2252 is described in subsection (a)(4)(B).  <u>See</u> § 2252(b)(2) (authorizing a ten-year maximum sentence for violations of subsection (a)(4)).

[2] A depiction is not "indistinguishable" unless "an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct."  18 U.S.C. § 2256(11) (2006). Moreover, the term "does not apply to depictions that are drawings, cartoons, sculptures, or paintings depicting

18 U.S.C. § 2256(8)(B) (2006). Thus, in contrast to Leonard, the charge and specification here does not "include the conduct and mens rea proscribed by directly analogous federal criminal statutes." 64 M.J. at 384.

## I.

The facts relevant to the granted issue are few. After conducting the providence inquiry, the military judge asked trial counsel to calculate the maximum punishment. Relying on 18 U.S.C. § 2252, the federal statute that prohibits the knowing possession of any visual depiction of a minor engaging in sexually explicit conduct, and this Court's decision in Leonard, trial counsel stated that the maximum punishment was "a dishonorable discharge, 10 years confinement, reduction to the rank of E-1, and total forfeitures."

Defense counsel argued that because the charged specification contained the language "appears to be a minor," it was not appropriate to look to 18 U.S.C. § 2252 for the maximum punishment because the federal statute only criminalizes visual depictions of actual minors. Instead,

---

minors or adults." Id. An image that simply "appears to be" child pornography, on the other hand, might be a Renaissance painting. See Ashcroft, 535 U.S. at 241.
[3] Contrary to the suggestions by the dissent, United States v. Beaty, __ M.J. __ (1, 11) (C.A.A.F. 2011) (Baker, J., dissenting), the words "indistinguishable from" appear nowhere in the charge or specification in this case.

he argued that the charged specification "would be more akin [to] disorderly conduct where the maximum punishment would be four months and two-thirds forfeitures." The military judge agreed with the Government but gave Appellant an opportunity to withdraw his guilty plea -- an opportunity Appellant declined.[4]

The military judge, for sentencing purposes, sua sponte purported to excise the "appears to be" language from this specification as surplusage and then summarily equated the judicially modified offense with a violation of 18 U.S.C. § 2252.[5] The military judge proceeded to find

---

[4] The Government has not argued waiver. Moreover, while it is apparent from the stipulation of fact and the providence inquiry that Appellant's conduct could have supported a specification alleging possession of visual depictions of minors engaging in sexual activity, and while the specification could have been amended by the agreement of the parties so as to eliminate the "appears to be" language, see Rule for Courts-Martial (R.C.M.) 603, that was not done here, and Appellant could only be convicted of what he was charged with. See United States v. Morton, 69 M.J. 12, 16 (C.A.A.F. 2010) (recognizing that while "an accused may choose, with convening authority approval, to plead guilty to any amended specification," an appellate court may not "affirm guilt based on an offense with which the accused has not been charged").

[5] Such unilateral action might constitute a prohibited substantial change to the charge, see generally R.C.M. 603(d), or otherwise conflict with this Court's case law. See generally United States v. Hemingway, 36 M.J. 349, 352 (C.M.A. 1993) (holding that punishment under the Manual for Courts-Martial, United States (MCM) is to be determined on the basis of the language of the specification). In any event, this purported change was not reflected in the promulgating order and so was, in effect, a nullity.

5

Appellant guilty of the specification and the charge, and sentenced him to be reduced to the grade of E-1, to be confined for ten months, and to receive a bad-conduct discharge.

## II.

The maximum punishment authorized for an offense is a question of law, which we review de novo. See United States v. Ronghi, 60 M.J. 83, 84-85 (C.A.A.F. 2004); United States v. Ingham, 42 M.J. 218, 229-30 (C.A.A.F. 1995). While we review a military judge's sentencing determination under an abuse of discretion standard, see Leonard, 64 M.J. at 383-84, where a military judge's decision was influenced by an erroneous view of the law, that decision constitutes an abuse of discretion. See United States v. Cowgill, 68 M.J. 388, 390 (C.A.A.F. 2010).

This Court has repeatedly held that possession of child pornography, whether actual or virtual, may constitutionally be prosecuted under clauses 1 and 2, Article 134, UCMJ. United States v. Brisbane, 63 M.J. 106, 116-17 (C.A.A.F. 2006); United States v. Mason, 60 M.J. 15, 20 (C.A.A.F. 2004); see also United States v. Forney, 67 M.J. 271, 274-75 (C.A.A.F. 2009). This, however, does not answer the separate question of what the maximum authorized punishment is in this particular case.

Article 134, UCMJ, provides:

Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to his chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

Emphasis added. However, Article 56, UCMJ, further provides:

§ 856. Art. 56. Maximum limits

The punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense.

R.C.M. 1003(c), promulgated by the President, provides the relevant guidance on those limits. Where an offense is listed in the MCM, Part IV, the maximum punishment is set forth therein and sets the maximum limits for authorized punishment. R.C.M. 1003(c)(1)(A)(i). The parties agree that possession of either child pornography or what appears to be child pornography is not a listed offense.[6]

---

[6] The Department of Defense has proposed an amendment to the MCM that would make child pornography -- including possessing, receiving, or viewing a visual depiction of "a minor, or what appears to be a minor" engaging in sexually explicit conduct -- a listed offense under Article 134, UCMJ, but the President has not yet promulgated this proposed change. Manual for Courts-Martial, Proposed Amendments, 74 Fed. Reg. 47785, 47786 (proposed Sept. 17, 2009).

For offenses not listed in Part IV, the maximum

punishment depends on whether or not the offense is

included in or closely related to a listed offense.[7] R.C.M.

1003(c)(1)(B).  We already determined in Leonard that

possession of child pornography is not included in, or

closely related to, a listed offense.  64 M.J. at 383.

Similarly, neither is possession of what appears to be

child pornography.  Therefore, R.C.M. 1003(c)(1)(B)(ii)

governs the maximum punishment in this case, and provides:

---

[7] The Government's argument that it is entitled to the
maximum punishment for a violation of the CPPA because the
offense charged here is "closely related" to that offense
in the United States Code is misplaced.  As in Leonard,
"[w]e observe that the 'closely related' language [in
R.C.M. 1003(c)(1)(B)(i)] . . . refers to offenses that are
closely related to offenses listed in the MCM," 64 M.J. at
383 -- not offenses in the United States Code, such as 18
U.S.C. § 2252A.  R.C.M. 1003(c)(1)(B)(ii) permits
punishment for an offense "as authorized by the United
States Code."  But cf. United States v. Blevens, 18 C.M.R.
104, 116 (C.M.A. 1955) (upholding the legality of an
Article 134, UCMJ, sentence imposed with reference to the
federal Smith Act, 18 U.S.C. § 2385, which the Court held
provided "an appropriate frame of reference for judging the
seriousness of the offense charged, and for measuring the
punishment," because the "evil against which the Smith Act
protects is essentially the same as the evil inherent in
the accused's conduct" without accounting for the different
mens rea between the offense charged and the mens rea
required by the Smith Act).  Insofar as Blevens can be read
to import the concept of "closely related" listed offenses
under subparagraph (i) into the different standard chosen
by the President in subparagraph (ii) with respect to
federal offenses, it is at odds with both the text of
R.C.M. 1003(c)(1)(B) and Leonard.

> Not included or related offenses. An offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable as authorized by the United States Code, or as authorized by the custom of the service.

First, we disagree that Leonard resolves the maximum sentence in this case. In Leonard, the specification alleged every element of the act prohibited by the United States Code, 18 U.S.C. § 2252(a)(2). Leonard, 64 M.J. at 383 (recognizing that a question exists under R.C.M. 1003(c)(1)(B)(ii) whether possession of child pornography without an interstate nexus as charged under Article 134, UCMJ, is punishable under 18 U.S.C. § 2252(a)(2)). We therefore determined that there was no abuse of discretion in setting the maximum punishment for a specification and charge of possession of visual depictions of minors engaging in sexually explicit activity by reference to the maximum punishment authorized by 18 U.S.C. § 2252(a)(2), (b)(1):

> We have looked before at the maximum sentence for offenses charged under clauses 1 or 2 of Article 134, UCMJ, that include the conduct and mens rea proscribed by directly analogous federal criminal statutes. In doing so, we focused on whether the offense as charged is "essentially the same," as that proscribed by the federal statute. United States v. Jackson, 17 C.M.A. 580, 583, 38 C.M.R. 378, 381 (1968); see also United States v. Williams, 17 M.J. 207, 216-17 (C.M.A. 1984) (upholding sentence for kidnapping under clauses 1 or 2 by referencing the maximum sentence for a

> violation of the federal kidnapping statute). <u>The military judge did not err by referencing a directly analogous federal statute to identify the maximum punishment in this case, when every element of the federal crime, except the jurisdictional element, was included in the specification</u>.

<u>Id.</u> at 384 (emphases added).

In this case, Appellant was charged with, pleaded guilty to, and was found guilty of possessing "one or more visual depictions of <u>what</u> <u>appears</u> <u>to</u> <u>be</u> a minor engaging in sexually explicit activity." (Emphasis added.) This is not the conduct proscribed by the federal statute referenced by trial counsel and the military judge. The United States Code does not criminalize possession of "what appears to be" child pornography. In fact, while such possession was criminal under a prior version of 18 U.S.C. § 2252A, that statute was amended to remove reference to such conduct. PROTECT Act, Pub. L. No. 108-21, § 502(a)(1), 117 Stat. 650 (replacing the CPPA's broad proscription of any image that "appears to be" of a minor engaging in sexually explicit conduct with the narrower prohibition of any image that is "indistinguishable from" a minor, and further defining "indistinguishable" by specifying that an ordinary person would conclude that the depiction is of an actual minor and excluding depictions that are drawings, cartoons, sculptures, or paintings).

The Government nonetheless argues that possession of "what appears to be" child pornography is the "same criminal conduct" as that proscribed in the CPPA.  We disagree, as this argument ignores three salient points.

First, in arriving at the maximum authorized sentence, the military judge relied upon 18 U.S.C. § 2252(a)(4)(B), which criminalizes possession of a "visual depiction" if "(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct."  Such depictions must involve actual minors.  See 18 U.S.C. § 2256(1) (defining "minor" as "any person under the age of eighteen years").  Unlike § 2252A, § 2252(a)(4)(B) does not authorize punishment for possession of images that are "indistinguishable" from images of minors engaging in sexually explicit conduct.  Accordingly, our holding that the maximum sentence for possession of "what appears to be" child pornography cannot be determined with reference to § 2252A applies a fortiori to § 2252(a)(4)(B), which references neither "appears to be" nor "indistinguishable," but requires "a minor."

Second, the prior version of § 2252A proscribed possession of any depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct."  18 U.S.C.

11

§ 2256(8)(B) (2000), amended by PROTECT Act, Pub. L. No. 108-21, § 502(a)(1), 117 Stat. 650.  This disjunctive construct illustrates that actual and apparent child pornography were never considered to be the same by Congress.  CPPA, Pub. L. No. 104-208, § 121(1), 1996 U.S.C.C.A.N. (110 Stat.) 3009-26, 3009-27 (distinguishing in the congressional findings between the various rationales for prohibiting sexually explicit images of "actual children" and those visual depictions that merely "appear to be children"); see also Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not."); Flora v. United States, 362 U.S. 145, 149 (1960) (holding that the word "or" suggests a disjunctive, rather than a conjunctive, reading).

Finally, the Supreme Court in Ashcroft specifically held that § 2252A was unconstitutionally overbroad to the extent it prohibited the possession of what "appears to be," rather than actual, child pornography.  535 U.S. at 256; see also United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003).  In response, Congress passed the PROTECT Act, which, inter alia, removed the "appears to be" language from the statute.  H.R. Rep. No. 108-66, at 60-61

(2003) (Conf. Rep.), reprinted in 2003 U.S.C.C.A.N. 683, 695-96.

To reiterate, we do not hold that Ashcroft renders Appellant's specification unconstitutional. Rather, we hold that it was error for the military judge to reference the punishment for 18 U.S.C. § 2252 and error for the CCA to reference the punishment for the amended 18 U.S.C. § 2252A to determine the maximum punishment in this case, because under neither statute is the offense with which Appellant was charged punishable at all. An offense comprised of acts that cannot be criminally charged under the United States Code at all is neither "directly analogous" nor "essentially the same" as one that can be. In sum, while the Government can charge an offense of possession of what appears to be child pornography under Article 134, UCMJ, the maximum punishment under the United States Code for possession of what "appears to be" child pornography is, in fact, no punishment at all. It was error as a matter of law to utilize the punishment authorized for a violation of the CPPA when setting the maximum punishment in this case.[8]

---

[8] The CCA nonetheless affirmed on the basis that the language in the specification provided fair notice to Appellant that he was charged with possessing actual child pornography. Beaty, 2010 CCA LEXIS 123, at *5-*7, 2010 WL

III.

The Government posits that even if it was error to arrive at the maximum punishment by reference to the CPPA, it did not prejudice the substantial rights of the accused because, in the absence of a presidential limitation on the punishment for the offense, the military judge was free to award any and all punishment up to the jurisdictional limits of a noncapital general court-martial -- namely, life without parole. See Article 18, UCMJ, 10 U.S.C. § 818 (2006). We disagree that there is no limitation upon the maximum punishment for the offense of possessing "what appears to be" child pornography.

Because Appellant's offense is (1) not listed in the MCM, (2) not included in or closely related to any other

---

4025786, at *2-*3. Accordingly, it concluded that the gravamen of the charged offense in this case, as in Leonard, was the same as that proscribed in 18 U.S.C. § 2252A. Id. In our view that conclusion is unwarranted in light of Congress's different treatment of "is" and "appears to be" and the Supreme Court's decision in Ashcroft. It is well settled that it is the language of the specification that governs the maximum punishment, and that an accused can neither be convicted of nor punished for an offense with which he is not charged. See generally U.S. Const. amend. V; Hemingway, 36 M.J. at 352 (holding that the language of the specification controls the determination of maximum punishment); cf. also R.C.M. 918(a)(1) (providing that "[e]xceptions and substitutions [to a specification] may not be used to . . . increase the seriousness of the offense or the maximum punishment for it"); supra note 3 (citing Morton, 69 M.J. at 16).

offense listed in Part IV of the MCM, and (3) not provided for in the United States Code, the maximum punishment is that "authorized by the custom of the service." See R.C.M. 1003(c)(1)(B)(ii). As in Leonard, we are unaware of any "custom of the service" specific to Appellant's offense, see 64 M.J. at 383. In our view this cannot mean that Article 134, UCMJ, can be read to mean that the maximum sentence is the jurisdictional maximum of a general court-martial -- life without parole. See Article 18, UCMJ. Permitting "discretion of that court" to include a maximum punishment of life without parole under these circumstances would violate the rule of lenity by permitting the imposition of greater punishment for the possession of what "appears to be" child pornography, an action which Congress now deems, in accord with Supreme Court precedent, not criminal, than Congress saw fit to impose for the possession of actual child pornography. See United States v. Thomas, 65 M.J. 132, 135 (C.A.A.F. 2007) (noting that this Court has "long adhered to the principle that criminal statutes are to be strictly construed, and any ambiguity resolved in favor of the accused . . . [when] the legislative intent is ambiguous, we resolve the ambiguity in favor of the accused.") (citation omitted).

Rather, when confronted with Article 134, UCMJ, offenses not specifically listed, that are not closely related to or included in a listed offense, that do not describe acts that are criminal under the United States Code, and where there is no maximum punishment "authorized by the custom of the service," they are punishable as "general" or "simple" disorders, with a maximum sentence of four months of confinement and forfeiture of two-thirds pay per month for four months. See, e.g., United States v. Melville, 8 C.M.A. 597, 600-02, 25 C.M.R. 101, 104-06 (1958) (holding that the then-unlisted offense of wrongful cohabitation was a general disorder not "closely related" to the offense of adultery, and that therefore the maximum legal sentence was the four months' confinement authorized for general disorders instead of the one-year penalty imposed for adultery); United States v. Oakley, 7 C.M.A. 733, 736, 23 C.M.R. 197, 200 (1957) (holding that the unlisted offense of solicitation of another to administer poison is a separate substantive offense under Article 134, UCMJ, not closely related to the listed offenses of solicitation to desert or to commit mutiny, and is thus punishable only as a simple disorder with a maximum punishment of four months' confinement and forfeiture of two-thirds pay for a like period); United States v. Blue, 3

16

C.M.A. 550, 552, 556, 13 C.M.R. 106, 108, 112 (1953) (holding that although the MCM sets out a maximum punishment of three years of confinement for the listed Article 134, UCMJ, offense of making, selling, or possessing official documents with intent to defraud, the mere wrongful possession of a false pass is a simple military disorder under Article 134, UCMJ, which carries a maximum sentence of four months); see also United States v. Sutter, 3 C.M.R. 809, 813 (A.F.B.R. 1952) ("The maximum punishment for the disorder . . . not being listed in the Table of Maximum Punishments or included within an offense listed or closely related thereto, and not being otherwise fixed, may not exceed confinement at hard labor for four months and forfeitures of two-thirds pay per month for four months.").

In line with this precedent, the maximum sentence for Appellant's offense as charged is four months of confinement and forfeiture of two-thirds pay per month for four months -- yet Appellant's approved sentence included ten months confinement and a bad-conduct discharge. Because the imposed sentence exceeded the maximum lawful sentence, it materially prejudiced Appellant's substantial rights. See United States v. Sanders, 67 M.J. 344, 345-46

United States v. Beaty, No. 10-0494/AF

(C.A.A.F. 2009); Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006).

IV.

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to the findings, but is reversed as to the sentence.  The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force.  A rehearing on the sentence may be ordered.

United States v. Beaty, No. 10-0494/AF

     BAKER, Judge (dissenting):

                            Introduction

     There are three issues in this case.  First, is the

military offense of "possession of visual depictions of what

appears to be a minor engaging in sexually explicit conduct"

charged under Article 134, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 934 (2006), directly analogous to either 18

U.S.C. § 2252(4) or 18 U.S.C. § 2252A(a)(5)?[1]  Second, does the

fact that this question arises in the context of a guilty plea

affect the analysis and outcome?  Finally, if not, is there an

applicable "punish[ment] . . . authorized by the custom of the

service"?  Rule for Courts-Martial (R.C.M.) 1003(c)(1)(B)(ii).

     Certainly with respect to § 2252A, the first question is

definitively resolved by the amendments to the Child Pornography

Prevention Act of 1996 (CPPA)[2] in the wake of Ashcroft v. Free

Speech Coalition.[3]  Those amendments changed the definition of

child pornography contained in 18 U.S.C. § 2256(8)(B).  At the

_____

[1] As the majority has indicated, it is unclear why the lower
court analyzed the issue based on § 2252A when the record
indicates that the trial participants appeared to be referencing
§ 2252.  However, regardless of which statutory provision was
relied upon, my position regarding the majority's analysis is
the same.

[2] PROTECT Act of 2003, Pub. L. No. 108-21, § 502(a)(1), 117 Stat.
650 (2003).

[3] 535 U.S. § 234 (2002).

time of Appellant's court-martial these amendments to the CPPA criminalized the possession of any visual depiction "that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct . . . such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct."[4]  In this case, Appellant pleaded guilty to possessing images that "appeared to be" indistinguishable from minors engaged in sexually explicit conduct; Appellant also stipulated to possessing pictures and video of known child pornography victims including a series involving vaginal, oral, and anal abuse.  The stipulated conduct factually describes the elements of 18 U.S.C. § 2252A(a)(5).  When charging under clauses (1) or (2) of Article 134, UCMJ, there is no requirement that the specification allege the elements of an offense using the verbatim language of a federal statute.

Further, the analysis regarding the import of Ashcroft in the context of this case is more nuanced than the majority presents, whether referencing either § 2252 or § 2252A.  The Supreme Court did not hold that the words "appears to be" were unconstitutional.  It held that in the context of the CPPA as written at that time, these words reached too far in light of the Court's prior case law involving pornography and the First

---

[4] 18 U.S.C. § 2256(8)(B), (11).

2

Amendment as well as the risk that these words might also reach legitimate expressions in fine art and literature. What "appears to be" means in Appellant's specification is a question of plain English. It should be assessed in the context of Title 18 of the United States Code, as written at the time of Appellant's court-martial in 2009, with the benefit and knowledge of Ashcroft's constitutional limitations.

In this context, the CPPA is directly analogous to the offense with which Appellant was charged and to which he providently pleaded guilty to committing. Therefore, it served as lawful reference for determining the maximum period of confinement for Appellant's offense. As a result, I respectfully dissent.

### Discussion

The essence of the majority's position is that Ashcroft "specifically held that § 2252A was unconstitutionally overbroad to the extent it prohibited the possession of what 'appears to be,' rather than actual, child pornography." United States v. Beaty, __ M.J. __ (12). Further, Congress amended the statute and removed this language. Id. at __ (12). Therefore, according to the majority, use of these words in a military criminal allegation charged under clauses 1 and 2 of Article 134, UCMJ, precludes reliance on § 2252A in determining the maximum period of confinement for this offense: because it is

3

not an offense in civilian context it cannot be analogous to any offense in the military.

I disagree for each of the distinct reasons below. In my view, the Supreme Court's concern in Ashcroft was not the mere words, "appears to be." Rather, the Court was concerned with the fact that these words, in the context of the statute as written at the time, permitted the statute to be read and applied in too broad a manner -- potentially extending the reach to images that had been determined to be protected speech under previous case law. Ashcroft, 535 U.S. at 246.

This is evident in the Court's analysis of § 2256(8)(B), where the offending phrase appeared. The Court looked to Miller v. California, 413 U.S. 15 (1973), and New York v. Ferber, 458 U.S. 747 (1982), to observe with respect to obscenity:

> [U]nder [Miller], the Government must prove that the work, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. The CPPA, however, extends to images that appear to depict a minor engaging in sexually explicit activity without regard to the Miller requirements.

Ashcroft, 535 U.S. at 246 (citations omitted). Regarding Ferber, the Court noted that Ferber upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were "'intrinsically related' to the sexual abuse of children." Id. at 249. It concluded that Ferber "reaffirmed that where the speech is neither obscene nor

4

the product of sexual abuse, it does not fall outside the protection of the First Amendment." Id. at 251. Thus, although the Court struck down this provision of the CPPA, it was not the literal phrase "appears to be," read in a vacuum, that posed the problem.

Further, it was on First Amendment grounds that the Court struck the provision containing the offending phrase. But long ago the Supreme Court recognized the distinction between the First Amendment protections of military members as compared with members of civilian society. In United States v. Forney, the majority opinion explicitly noted this in the child pornography context: "That the possession of virtual child pornography may be constitutionally protected speech in civilian society does not mean it is protected under military law." 67 M.J. 271, 275 (C.A.A.F. 2009) (opinion announcing the judgment of the Court). This means that the scope of punishable child pornography is broader than that punishable under the CPPA. Thus, the relevant question is not whether the CPPA punishes images that appear to be child pornography, but whether it punishes the possession of child pornography, period. While in civilian law, the accommodation of First Amendment concerns may require distinctions between actual and virtual child pornography to avoid overbreadth, Ashcroft, 535 U.S. at 251, in the military the First Amendment context is different and the prohibition on

5

possessing images depicting child pornography does not necessarily result in comparable concerns of overbreadth. This is consistent with the Supreme Court's assertions that invalidation due to overbreadth should be used sparingly. See e.g. Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973).

The fact that the military may define child pornography more expansively in the context of military life than the CPPA may do in the context of civilian society, does not mean the offenses are not analogous for the purpose of determining the maximum authorized confinement for the offense. Analogous does not mean "the exact same." In United States v. Blevens, for example, this Court held that a statute was sufficiently analogous as to be "an appropriate frame of reference for judging the seriousness of the offense charged, and for measuring the punishment" based on the fact that "[t]he evil against which the [statute] protects is essentially the same as the evil inherent in the accused's conduct." 5 C.M.A. 480, 492, 18 C.M.R. 104, 116 (1955).[5]

Blevens is squarely on point: as in the present case, the offense was not an enumerated offense, was neither included in

---

[5] Blevens was charged under Article 134, UCMJ, with wrongfully, unlawfully, and knowingly affiliating himself with a group advocating the violent overthrow of the United States government. In such a case, like the current Manual for Courts-Martial (MCM) provision, the 1951 MCM provided that such an offense may be punished as authorized by the United States Code. MCM para. 127.c. (1951 ed.).

nor closely related to such an offense and was not otherwise listed in the MCM at the time.  This Court upheld the use of an analogous statute at sentencing based on the "evil" the statute was to address.  Blevens remains valid precedent and the majority's reason for discarding it is unpersuasive.  The Blevens Court explicitly stated that the concept of a closely related listed offense was not the basis for its ultimate holding that "reference to the Smith Act for the purpose of assessing punishment is entirely proper." Id.

The phrase "appears to be," outside of the context of § 2256 of the CPPA as written at the time of Ashcroft, has no significance beyond its ordinary meaning.  Consequently, as a matter of logic with respect to the offense at issue in this case, such images appear to be what they depict.  They continue to "appear to be" child pornography unless or until the Government proves them to meet the legal definition (or fails to do so), or the accused admits that they are what they depict.

Congress's amendment of § 2256 in the wake of Ashcroft further supports the point.  Indeed, it definitively resolves the issue as to what is analogous.  At the time of Appellant's court-martial, the definition of child pornography contained in § 2256(8)(B) stated:

> (8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or

7

> produced by electronic, mechanical, or other means, of sexually explicit conduct, where --
>
> . . . .
>
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct[.]

18 U.S.C. § 2256(8)(B) (emphasis added). Later in subsection

(11), the statute defines indistinguishable as follows:

> the term "indistinguishable" used with respect to a depiction, means virtually indistinguishable, in that the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct. This definition does not apply to depictions that are drawings, cartoons, sculptures, or paintings depicting minors or adults.

18 U.S.C. § 2256(11) (emphasis added). These statutory

definitions clearly envision coverage of images that are

depictions of minors engaged in sexually explicit conduct, and

also depictions that appear to an ordinary person to be so. It

is clear too that both so-called "virtual" images and "real"

images are considered to be child pornography for the purpose of

military prosecutions under Article 134, UCMJ. See United

States v. Brisbane 63 M.J. 106, 116-17 (C.A.A.F. 2006); United

States v. Mason, 60 M.J. 15, 20 (C.A.A.F. 2004); Forney, 67 M.J.

at 274-75. It follows then, that the phrase "appears to be"

could denote child pornography with known child victims, as well

as depictions that an ordinary person would conclude are of a

8

minor engaged in sexually explicit conduct.[6]  The majority, however, assumes that use of the phrase "appears to be" necessarily refers back to the version of the CPPA in effect at the time Ashcroft was decided, rather than to the version of the statute in effect at the time the offense in this case was charged.  As a result, the majority's position assumes that the charge was drafted with reference to the specific statutory language that was found unconstitutional in Ashcroft as opposed to having been drafted in a descriptive manner.  Such a presumption might be well founded if there was a requirement to incorporate statutory language verbatim into the charging document; but there is no such requirement.  "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication."  R.C.M. 307(c)(3).

All of this notwithstanding, in the guilty plea context, reliance on exactly what the accused admits during the plea inquiry removes any issue or doubt and determines the maximum authorized punishment.  This is, or was, settled law in this Court.  In United States v. James, 55 M.J. 297 (C.A.A.F. 2001),

---

[6] Justice O'Connor, in her concurring and dissenting opinion in Ashcroft, acknowledged this plain reading explicitly:  "The 'appears to be . . . of a minor' language in § 2256(8)(B) covers two categories of speech:  pornographic images of adults that look like children ('youthful-adult pornography') and pornographic images of children created wholly on a computer, without using any actual children ('virtual-child pornography')."  Ashcroft, 435 U.S. at 261 (O'Connor, J., concurring and dissenting).

decided before Ashcroft, the accused pled guilty to possession of child pornography under 18 U.S.C. § 2252A. The issue was whether or not the definition of child pornography contained in that version of the CPPA was constitutional. Following the U.S. Court of Appeals for the First Circuit and other circuits, we determined that the definition was constitutional. Ashcroft overruled this aspect of James. In James, however, we further held that, "even if the First Circuit's approach to 18 U.S.C. § 2252A is not followed" the conviction would be valid based on the fact that "Appellant's admissions 'objectively support' his pleas of guilty to violations of the more narrowly construed statute directed at sexual pictures of actual minors." James, 55 M.J. at 300. We included a citation to United States v. Shearer, 44 M.J. 330 (C.A.A.F. 1996), for the proposition that "[a]n inquiry into the providence of a guilty plea must establish the factual circumstances admitted by the accused which 'objectively' support his plea." James, 55 M.J. at 300 (quoting Shearer, 44 M.J. at 334).

In the present case, as the majority notes, Appellant's plea inquiry revealed that he admitted that the images he possessed were of real children; in fact, Appellant stipulated that "[t]he National Center for Missing and Exploited Children (NCMEC) reviewed the files and identified 14 unique images and nine unique videos on the Accused's computer that contained

10

known child pornography victims." He further stipulated that "[f]ive of the NCMEC-identified images and five videos on the Accused's computer were from the 'Vicky Series' and showed the sexual abuse of a child victim named [KF] by the victim's father, who sexually abused the victim orally, vaginally and anally when she was between 10 and 11 years of age." A statement from KF was attached to the stipulation.

In sum, Appellant was charged with possessing images that were indistinguishable from and thus appeared to be child pornography; there was good reason for this, because Appellant stipulated that the images he possessed consisted of actual children in sexual acts with adult males. As a result, it is my view that the offense alleged in this case is more than just analogous to the offenses set forth in 18 U.S.C. §§ 2252 and 2252A -- it is the same offense.

I would decide this case on this basis. However, the majority not only maintains that the charge was not analogous to the amended CPPA, it has also determined that there was no punishment for this offense authorized by military custom. I take issue with this assertion as well. In my view, there is a need to investigate military practice in this area before concluding there is no service custom. The majority has not done so.

United States v. Beaty, No. 10-0494/AF

Custom arises from "long established practices which by common usage have attained the force of law in the military or other community affected by them." MCM pt. IV, para. 60.c. (2)(b) (2008 ed.).[7] In United States v. Leonard, 64 M.J. 381, 383 (C.A.A.F. 2007), we said that it was "at best an open question" whether there was a service custom regarding punishment for receiving child pornography under Article 134(1) or (2) because the proliferation of child pornography via new media technology was "a relatively recent development." The technology that child pornography consumers are using may be new, but the underlying issue -- "prevention of sexual exploitation and abuse of children," Ferber, 458 U.S. at 757 -- is not. The Supreme Court has explicitly recognized child pornography's harms for decades, including harm to child victims as well as a larger societal harm.[8] In military law the maintenance of good order and discipline is an additional foundational impetus for prosecuting child pornography, and this interest does not depend on the identification of a known child victim.

---

[7] With the exception of the substitution of "usage" for "consent" the definition of custom has remained unchanged since 1951. See MCM para. 213.b. (1951 ed.).

[8] "[The] use of children as . . . subjects of pornographic materials is very harmful to both the children and the society as a whole." S. Rep. No. 95-438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 43, quoted in Ferber, 458 U.S. at 758 n.9.

12

Given the large number of cases involving child pornography in the military, particularly since the Internet age, I do not see how the majority can conclude that there is no custom in this area without detailed case law analysis -- such a judgment would seem at least to require analysis of what the service has done in the past with similar cases. Moreover, the military has, as a matter of long-standing custom that predates the enactment of the UCMJ, punished lewd conduct involving children with a maximum punishment of seven years and a dishonorable discharge. See MCM, U.S. Army para. 117.c. (1949 ed.) (Table of Maximum Punishments, § A).

Thus, as Chief Judge Quinn wrote in characterizing the offense at issue in Blevens, "[i]t shocks reason and conscience to imply that such conduct is punishable only as a simple disorder." 5 C.M.A. at 492, 18 C.M.R. at 116. All the more so since the offense has not heretofore been punished in that manner.